# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MIKE JABARY | § | |
| | § | |
| v. | § | Case No. 4:10-cv-711 |
| | § | Judge Mazzant |
| CITY OF ALLEN, STEPHEN TERRELL, | § | |
| and BRET MCCULLOUGH | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant City of Allen's Motion for Summary Judgment (Dkt. #170). Having considered the motions, the responses, and the relevant pleadings, the Court finds that the City of Allen's motion should be granted.

## BACKGROUND

In early January 2009, Mike Jabary ("Plaintiff" or "Jabary") submitted an "Application for a Commercial Certificate of Occupancy Only" to the City of Allen (the "City"), proposing to use building space as a "Restaurant" (Dkt. #170 at Apx. 27). The City, on January 28, 2009, issued a certificate of occupancy to Jabary restricting his use of the building to "Restaurant (No Drive-in or Through)" within an "SC" use zone (Dkt. #170 at Apx. 22).

Jabary Mediterranean operated as a hookah bar and restaurant from its inception and with complete disclosure to the City of Allen (Dkt. #167 at ¶¶ 11, 19). The purpose of the hookah bar was "designed to be a place of social gathering with the primary purpose of allowing patrons to experience Mr. Jabary's cultural heritage." *Id*. It is undisputed that Jabary sold food, drinks, and tobacco products and other merchandise, including K2, from his business. *Id*. at ¶ 18; *see also* Dkt. #170 at Apx. 11-13 (documenting the sale of K2 to Officer Jon Felty). K2 or "spice" is a mixture of herbs and spices that is typically sprayed with a synthetic compound chemically similar to THC, the psychoactive ingredients in marijuana (Dkt. #170 at Apx. 68). K2 products

1

are normally smoked in joints or pipes and physiological effects of K2 include increased heart rate and increased blood pressure. *Id*. Psychological effects are similar to those of marijuana and include paranoia, panic attacks, and giddiness. *Id*. On March 1, 2011, the DEA placed five synthetic cannabinoids into Schedule 1 of the CSA, based on a finding that the placement of these synthetic cannabinoids into Schedule 1 is necessary to avoid an imminent hazard to the public safety. *Id*. at 68-69. It is no longer legal to sell K2; however, at the time Jabary was operating his business, it was legal to sell.

The evidence indicates that in early 2010, law enforcement officers began visiting Jabary Mediterranean in response to concerns from the community regarding the sale of tobacco and K2 to minors in the City. Specifically, the Allen ISD Ninth Grade Center was less than one mile from Jabary Mediterranean, and portions of the Allen High School campus were directly across the street from Jabary Mediterranean (Dkt. #170 at Apx. 80).[1] Felty, formerly a defendant in this litigation, stated that he visited Jabary's business a minimum of six times, and he may have been inside the business as many as twelve times. *Id*. at Apx. 79.

On May 27, 2010, Jabary Mediterranean received a write-up noting many sanitation violations, and assigning it a "hazardous" risk category (Dkt. #170 at Apx. 54). On June 8, 2010, the police department made a presentation at a City Council meeting regarding the dangers of K2 (Dkt. #135 at Apx. 31-44; 49-52). Jabary attended the meeting and spoke out. *Id*. at Apx. 51.[2]

---

[1] Plaintiff objects to this statement in the declaration of Felty on the basis that it is self-serving and not relevant. This statement is not self-serving. The Court considers this statement only in the context of the reasons underlying the community concern regarding Jabary Mediterranean. This statement is certainly relevant to the issue of community concern, and the exigency or public health emergency that could have justified the revocation of the Certificate. Plaintiff's objection is overruled.

[2] About one month after the June 8, 2010 meeting, and after the revocation of Jabary's Certificate, the City of Allen adopted an ordinance banning the sale, possession, or use of the primary ingredients of K2. *Id*. at Apx. 56-58. Beginning March 11, 2011, the federal DEA has adopted regulations banning the active ingredients in K2. *Id*. at Apx. 59-62.

On June 9, 2010, Jabary Mediterranean received another write-up noting many of the same health violations, among other health and sanitation violations. *Id*. at Apx. 55. Jabary Mediterranean was again assigned to a "hazardous" risk category. *Id*. On that date, Jabary Mediterranean's kitchen was dirty, unsanitary, and did not meet a number of health and safety requirements. *Id*. Several items that were noted critical items from the prior inspection report were not corrected at the time of the second inspection. *Id*. As a result, McCullough revoked Jabary Mediterranean's certificate of occupancy, effective immediately (Dkt. #170 at Apx. 2-3). The Notice of Violation given to Jabary had the line next to "Certificate of Occupancy – doing business in the City of Allen without a certificate of occupancy" checked, and McCullough noted directly on the reverse side, "Allen Land Development Code Table 4.20.2 Schedule of Principal – In Violation of – Certificate of Occupancy is hereby revoked. Establishment does not meet criteria for Restaurant Use." *Id*.

On December 28, 2010, Jabary *pro se* filed a Complaint against Defendants (Dkt. #1). The Court then granted Jabary's request to proceed *in forma pauperis* and denied Jabary's request for counsel on January 19, 2011 (Dkt. #7). On May 13, 2011, Jabary, now with counsel, filed the Amended Complaint (Dkt. #9). The City filed a motion to dismiss on July 1, 2011, and Defendants Peter Smith, Stephen Terrell, Bo Bass, and Jon Felty filed a Motion to Dismiss for Failure to State a Claim and Alternative Request for Rule 7(a) Reply the same day (Dkt. #17, #18). On August 24, 2011, Jabary filed a Second Amended Complaint and Rule 7A Reply (Dkt. #37). The same defendants filed a motion to dismiss on October 4, 2011 (Dkt. #48, #49). Defendants Peter Vargas, Bret McCullough, and William Rushing filed a motion to dismiss on November 14, 2011, to which Jabary did not respond (Dkt. #66).

On January 27, 2012, the undersigned granted the individual defendants' motions to dismiss, but stayed the takings claim against the City until Jabary could exhaust all state procedures for remedies (Dkt. #78, #79). The recommendation of the undersigned was adopted by United States District Judge Michael H. Schneider on February 29, 2012 (Dkt. #100). On July 11, 2012, the undersigned recommended that a final judgment be entered as to the individual defendants (Dkt. #113). On August 24, 2012, the recommendation of the undersigned was adopted by United States District Judge Ron Clark, and final judgment was entered (Dkt. #118, #119). Plaintiff appealed from this final judgment to the Fifth Circuit Court of Appeals (Dkt. #120).

On November 25, 2013, the Fifth Circuit affirmed the dismissal of the substantive due process and conspiracy claims against each of the individual defendants, modified the dismissal of the takings claim against the City to be without prejudice and affirmed the dismissal as modified,[3] and reversed and remanded the procedural due process claims against Defendants Terrell and McCullough (Dkt. #122). *Jabary v. City of Allen*, 547 F. App'x 600 (5th Cir. 2013).

On July 17, 2014, the undersigned entered a report and recommendation on Defendants' Motion for Summary Judgment (Dkt. #135), which was filed on behalf of Defendants Stephen Terrell and Bret McCullough (Dkt. #151). The report and recommendation addressed Plaintiff's procedural due process claim and Defendants' qualified immunity defense, and recommended that Plaintiff's claims against Defendant Stephen Terrell be dismissed with prejudice. The report

---

[3] The undersigned did not recommend the dismissal of the takings claim against the City with prejudice, but instead recommended the dismissal of the takings claim without prejudice (*See* Dkt. #79 at 13 ("The Court agrees with the City that Plaintiff's takings and due process claims are not ripe and should be dismissed without prejudice to pursue his state remedies."); 14 (recommending the case be stayed with regard to the claims against the City until Plaintiff exhausts his state remedies)). The recommendation of the undersigned was adopted by United States District Judge Michael H. Schneider, and found that the recommendation should be adopted and the claims stayed to allow Plaintiff to exhaust state remedies (Dkt. #100 at 4 (adopting the report and recommendation of the United States Magistrate Judge, granting the City's 12(b)(6) motion in part, and staying the case sixty days to allow Plaintiff to exhaust his state remedies.))

4

further recommended that Plaintiff's claims against Defendant Bret McCullough remain for trial. The report and recommendation was adopted on December 10, 2014, and Plaintiff's claims against Stephen Terrell were dismissed with prejudice (Dkt. #182).

On July 31, 2014, Plaintiff filed a motion to lift the stay and reinstate the case as to the City of Allen (Dkt. #158). After considering the response and conducting a hearing, the Court granted the motion, lifted the stay imposed as to the City, and reinstated Plaintiff's complaint against the City (Dkt. #161).

On October 31, 2014, Plaintiff filed his Fourth Amended Complaint against the City of Allen, Stephen Terrell, and Bret McCullough (Dkt. #167). On November 14, 2014, the City filed its motion for summary judgment (Dkt. #170). On December 20, 2014, Plaintiff filed his response to the motion (Dkt. #186). On December 23, 2014, the City filed its reply (Dkt. #189).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor . . . unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence but must refrain from making any credibility determinations or from weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS[4]

---

[4] Plaintiff made several objections to the City's statement of undisputed facts, as well as objections to the declarations of Jon Felty, Shelley George, Matthew Johnson, Bret McCullough, and Stephen Terrell (See Dkt. #186 at 1-15). Plaintiff also objects to several documents on the basis of relevance, hearsay, lack of authentication, improper expert testimony, not disclosed in discovery, and mischaracterizes the evidence. Plaintiff's objections to the documents are overruled. To the extent the Court relies on any of the remaining objected-to evidence in its analysis of the City's motion for summary judgment, the Court will address Plaintiff's objection at that time.

Plaintiff asserts four claims against the City, which include a takings claim, a procedural due process claim, and two substantive due process claims. The City moves for summary judgment on all claims asserted by Plaintiff.

First, the City asserts that Plaintiff's claims are barred by the doctrine of res judicata or collateral estoppel. Some of Plaintiff's claims against the City of Allen were litigated in the State of Texas courts, and the state court issued a summary judgment in favor of the City and against Plaintiff (Dkt. #170 at Apx. 257). That summary judgment was affirmed by the Fifth Court of Appeals at Dallas. *Id*. at Apx. 412-15. This Court must give full faith and credit to the judgments of the State Courts of Texas. U. S. CONST. art. IV, § 1; 28 U.S.C. § 1738; *San Remo Hotel v. County and City of San Francisco*, 545 U.S. 323, 347 (2005). When giving full faith and credit to the judgments of the state court, this Court will follow the issue preclusion rules for res judicata and collateral estoppel that would apply in the forum state, which in this case is Texas. *San Remo*, 545 U.S. at 338.

The doctrine of res judicata, read in the broadest sense of the term, embraces two distinct preclusion concepts: claim preclusion, often termed "res judicata," and issue preclusion, often referred to as "collateral estoppel." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994). Claim preclusion, or "pure" res judicata, is the "venerable legal canon" that ensures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits. *Medina v. I.N.S.,* 993 F.2d 499, 503 (5th Cir. 1993).

"Under Texas law, three elements must be satisfied in order for res judicata to be appropriate: '(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.'" *Carrasco v. City of Bryan, Tex*., No.

H-11-662, 2012 WL 950079, at *3 (S.D. Tex. March 19, 2012) (quoting *Berkman v. City of Keene*, No. 3:10-cv-2378-B, 2011 WL 3268214 (N.D. Tex. July 29, 2011)); *see also Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1252-54 (5th Cir. 1991). If these three conditions are satisfied, res judicata prohibits either party from raising any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action. *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990).

Issue preclusion, or collateral estoppel, in contrast, promotes the interests of judicial economy by treating specific issues of fact or law that are validly and necessarily determined between two parties as final and conclusive. Issue preclusion is appropriate only if the following four conditions are met: (1) the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (2) the issue must have been fully and vigorously litigated in the prior action; (3) the issue must have been necessary to support the judgment in the prior case; and (4) there must be no special circumstance that would render preclusion inappropriate or unfair. *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-32 (1979)).

Turning first to the issue of res judicata, Plaintiff concedes elements two (2) and three (3), and agrees that the parties are identical and the causes of action are the same or similar (*See* Dkt. #186 at 16, ¶ 49). Plaintiff asserts that the Texas courts were not courts of competent jurisdiction and there was no final judgment on the merits of the claim. Plaintiff argues that the Texas district court granted Defendant's Motion for Summary Judgment Asserting a Plea to the Jurisdiction, and that the Texas Court of Appeals affirmed the district court's dismissal based on a lack of subject matter jurisdiction (Dkt. #186 at 16-17; Dkt. #170 at Apx. 257).

In the underlying state court matter, the City's motion for summary judgment was based on its assertion that its sovereign immunity was not waived by either the Texas Tort Claims Act or the Texas Constitution, and that Plaintiff's takings claims were not ripe. Thus, the Texas district court determined that it lacked subject matter jurisdiction over Plaintiff's claims. First, "[c]ourts always have jurisdiction to determine their own jurisdiction." *Houston Municipal Employees Pension System v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007). The district court and the Texas Court of Appeals were clearly courts of competent jurisdiction to decide the exact issue that is before the Court today – whether Plaintiff's takings claims is ripe.

Further, the Fifth Circuit has recognized that under Texas law, summary judgment on the basis of sovereign immunity is a judgment on the merits for purposes of the application of res judicata. *Flores v. Edinburg Consolidated I.S.D.*, 741 F.2d 773, 774 (5th Cir. 1984). Summary judgment was granted in favor of the City in this case, partially on grounds that Plaintiff's claims were barred by sovereign immunity, which is a final judgment. *See Berkman v. City of Keene*, No. 3:10-cv-2378-B, 2011 WL 3268214, at *3 (N.D. Tex. July 29, 2011) (citing *Flores*, 741 F.2d at 775 n.3). Thus, after a review of the case law, the Court finds that the Texas state courts entered a final judgment on the merits of the case finding that Plaintiff's claims were barred by sovereign immunity, and the takings claim was not ripe. In 2009, the Fifth Circuit noted in *Severance v. Patterson*, that the requirement of requiring a claimant to litigate a takings claim first in state court would effectively require plaintiffs to litigate their federal takings claims in state court and bar plaintiffs from ever litigating a takings claim in federal court. 566 F.3d 490, 497 (5th Cir. 2009). However, the Fifth Circuit stated that this result was required by the Supreme Court's decision in *San Remo*, and noted that the Supreme Court observed that "[i]t is hardly a radical notion to recognize that, as a practical matter, a significant number of plaintiffs

will necessarily litigate their federal takings claims in state courts." *Id*. at 498 (citing *San Remo*, 545 U.S. at 346). The Supreme Court stated that "[s]tate courts are fully competent to adjudicate constitutional challenges to local land-use decisions," and "[i]ndeed, state courts undoubtedly have more experience that federal courts do in resolving the complex factual, technical, and legal questions." *San Remo*, 545 U.S. at 347.

Further, Plaintiff litigated both his state and federal takings claims simultaneously in the state court proceeding, and did not attempt to reserve his takings claims for return to federal court. "When a proper reservation has been made, the litigant's right to return to the federal courts must in all events be preserved." *Guetersloh v. State*, 930 S.W.2d 284, 289 (Tex. App. – Austin, 1996, writ denied) (citation omitted). "However, if a party is found to have freely sought a binding adjudication of all his claims in state court, and he has failed to make a proper reservation to the disposition of the entire case by the state courts, then that party has in effect foregone his right to return to federal court to bring his federal claim." *Id*. (citation omitted). In the present case, it is undisputed that Plaintiff fully litigated his takings claim in state court, did not attempt to reserve his federal takings claim, and, thus, his claim is now barred in this Court.

In addition, the Court notes that Plaintiff's takings claim against the City is also barred by issue preclusion. *See Universal Am. Barge Corp. v. J-Chem, Inc*., 946 F.2d 1131, 1136 (5th Cir. 1991). First, the issue under consideration is identical to the issue litigated in the state court – specifically, whether Plaintiff's takings claim is ripe for consideration. Second, the issue was fully and vigorously litigated in the state court action. Third, the issue was necessary to support the judgment in the prior case. Last, the Court finds no special circumstances that would render

preclusion inappropriate or unfair. Thus, the Court finds that Plaintiff's takings claim against the City is barred by both res judicata and collateral estoppel, or issue preclusion.[5]

The City also asserts that the takings claim fails because it is not ripe. "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). It is undisputed in this case that following the revocation of Jabary's certificate of occupancy, a City Ordinance provided Jabary with a right of appeal within fifteen (15) days of the date of the decision of the chief building official or other administrative officer (*See* Dkt. #170 at Apx. 26). These remedies are also available pursuant to Texas Local Government Code §§ 211.008 - 211.010. It is also undisputed that Jabary never used or attempted to use these procedures available to him. The 219th District Court granted summary judgment on this issue and dismissed the takings claim. The Fifth Court of Appeals at Dallas agreed that this case should be dismissed because Jabary did not ripen his taking claim by appealing pursuant to the City ordinance or the Texas Local Government Code.

There are two prerequisites to the ripeness of a federal regulatory takings claim. *City of Dallas v. Chicory Court Simpson Stuart, LP*, 271 S.W.3d 412, 417 (Tex. App. – Dallas 2008, rev. denied). "The first is a final decision by the governmental entity charged with applying the

---

[5] The City also asserts that Plaintiff's claims for procedural due process and substantive due process fail for the same reasons. The City contends that Plaintiff made no effort to reserve any of these claims for return to federal court, and all three remaining claims arise out of the same facts and circumstances and transactions which Plaintiff alleged as a basis for a takings claim. The City argues that by asserting these facts and circumstances, which were irrelevant to his takings claim, Plaintiff presented broader claims and these are now barred by issue preclusion and res judicata. The Court disagrees that these claims are barred by res judicata or issue preclusion. While Plaintiff certainly asserted the underlying facts of the claims in support of his takings claim, the Texas state courts did not issue any judgment on the merits regarding these claims as it was not necessary in reaching their conclusions on Plaintiff's takings claim.

regulations to the property at issue." *Id.* (citing *Williamson*, 473 U.S. at 186). "The second requirement is that the claimant must have used available and adequate state procedures for obtaining compensation (if such procedures exist) and must have been denied just compensation." *Id.* In this case, Jabary failed to obtain a final decision by the by the governmental entity charged with applying the regulations. Further, Jabary did not use available and adequate state procedures for obtaining compensation and was further denied just compensation. Jabary cannot establish either of these requirements, and the Court agrees that his federal takings claim is not ripe, and should be dismissed for this additional reason.

Turning now to Plaintiff's procedural and substantive due process claims, the City contends that Plaintiff failed to plead sufficient facts to state a claim pursuant to 42 U.S.C. § 1983, and argues that Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Specifically, the City argues that Plaintiff's claims do not satisfy the pleading requirements set out under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978). However, since the Court must consider evidence outside the pleadings in order to resolve the dispute of the parties, the Court will construe this request as a motion for summary judgment under Federal Rule of Civil Procedure 56. *See* FED. R. CIV. P. 12(d).

"[R]espondeat superior does not apply to municipalities for claims under § 1983." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Instead, liability may be imposed "only where [the government entity] *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95) (emphasis in original). Thus, in order to hold the City liable under Section 1983, Plaintiff must establish that the "execution of [the City's] policy

or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Deville,* 567 F.3d at 170. Official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). "Moreover, when proceeding under § 1983, 'each and any policy which allegedly cause constitutional violations must be specifically identified by a plaintiff.'" *Akins v. Liberty County*, No. 1:10-cv-328, 2014 WL 105839, at *9 (E.D. Tex. Jan. 9, 2014) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Therefore, for Section 1983 liability to attach, a plaintiff must demonstrate three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing, *inter alia*, *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005)).

Defendant contends that Plaintiff fails to identify a policymaker. The Court agrees that Plaintiff does not identify a final policymaker in his Fourth Amended Complaint (Dkt. #167). In his response, Plaintiff contends that Bret McCullough ("McCullough") is a final policymaker because he takes the place of the governing body, in this case, the City Council of the City of Allen. A policymaker is "one who takes the place of the governing body in a designated area of city administration." *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 166 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). "A city's governing body may delegate policymaking authority (1) by express statement or formal action or (2) it may, by

its conduct or practice, encourage or acknowledge the agent in a policymaking role." *Id.* (internal citation and quotations omitted).

A review of the summary judgment evidence provided by the City reveals that the City Council of the City of Allen is the policymaking body (*See* Dkt. #170 at Apx. 86). Section 2.06 of the City of Allen Charter states, "[A]ll powers of the city and the determination of all matter of policy shall be vested in the council." *Id.* Plaintiff points out that the City of Allen's Code of Ordinance, Chapter 2, Article VII, Division 12 states: "The chief building official shall supervise and be responsible for the functions and operations of the building and code compliance department" (*See* Dkt. #186 at 21). Plaintiff argues that McCullough, as the chief building official, was the final decision-maker with regard to the power to revoke certificates of occupancy. However, any decision made by McCullough was also subject to review by the City's Board of Adjustment as established by Allen Land Development Code § 2.02.2.b, which expressly provides a right to appeal "… any decision of the Chief Building Official or other administrative officer…" (*See* Dkt. #170 at Apx. 26). Thus, while it is clear that McCullough had the authority to make the initial decision regarding the revocation of the certificate of occupancy, he did not have final decision-making authority in this case.

The City also asserts that Plaintiff failed to identify a policy or custom that caused a violation of civil rights. There are two forms that an official policy may take: (1) "a plaintiff may point to a policy statement formally announced by an official policymaker;" or (2) "the plaintiff may demonstrate a 'persistent widespread practice of city officials or employees, which, although not authorized by official adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Zarnow,* 614 F.3d at 166 (citation omitted).

> A plaintiff may prove the existence of a 'custom or policy' in one of two ways. First, a pattern of unconstitutional conduct may be shown on the part of municipal actors or employees. A pattern of conduct is necessary only where the municipal actors are not policymakers. Alternatively, it may be shown that a final policymaker took a single unconstitutional action.

*Id.* (citations omitted). As noted above, Plaintiff cannot demonstrate that a final policymaker took a single unconstitutional action. Plaintiff does not allege or argue that there was a persistent or widespread practice of city officials or employees that could fairly represent municipal policy. At most, Plaintiff argues that a city official, McCullough, took a single unconstitutional action when he revoked Plaintiff's certificate of occupancy. However, this is not sufficient to prevail at summary judgment on a 42 U.S.C. § 1983 claim against the City. For these reasons, the Court finds that both Plaintiff's procedural and substantive due process claims fail against the City.

Finally, the City argues that Plaintiff's substantive due process claims should be dismissed. The City notes that three years ago, this Court found that Plaintiff failed to state a plausible claim for relief as to all substantive due process claims against all individual Defendants (Dkt. #78). The District Judge adopted the recommendation of the Magistrate Judge (Dkt. #100). Additionally, the District Judge entered a final judgment dismissing these claims with prejudice as to all individual Defendants (Dkt. #119). The United States Court of Appeals for the Fifth Circuit affirmed the dismissal with prejudice of all substantive due process claims against the individual Defendants. *See Jabary*, 547 F. App'x at 603-04. Plaintiff has failed to show that any individual committed a substantive due process violation, and therefore, his claims fail as to the City. *See Barrow v. Greenville Independent School Dist.*, No. 06-10123, 2007 WL 3085028, at *8-9 (5th Cir. 2007).[6]

---

[6] In addition, the Court notes that Plaintiff represented to this Court on August 8, 2014, that he was seeking to lift the stay of this case so that he could pursue only his takings claim and that it was only against the City. The Court did not grant, nor did Plaintiff request, leave to assert any other claims against the City.

"[G]overnment action comports with substantive due process if the action is rationally related to a legitimate government interest." *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) (citation omitted). "Only if such government action is 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare,' may it be declared unconstitutional." *Id*. There is no evidence that the actions of any individual or the City itself were "clearly arbitrary" or "unreasonable." In fact, this Court has already found that the circumstances surrounding the revocation of the certificate of occupancy were sufficient to serve as a reasonable basis for finding a public health emergency existed (*See* Dkt. #151 at 17). Thus, the Court finds that Plaintiff's claim for substantive due process should also be dismissed.[7][8]

## CONCLUSION

Based on the foregoing, the Court finds Defendant City of Allen's Motion for Summary Judgment (Dkt. #170) is hereby **GRANTED**, and further finds that Plaintiff's claims against the City of Allen are dismissed with prejudice.

**SIGNED this 22nd day of January, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[7] Defendant also moves for summary judgment on Plaintiff's equal protection claim; however, it appears that no equal protection claim is pleaded in Plaintiff's Fourth Amended Complaint (Dkt. #167).
[8] Because the Court finds that Defendant's motion is granted, it will not address Defendant's remaining arguments.