# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MIKE JABARY | § | |
| | § | Civil Action No. 4:10-CV-00711 |
| v. | § | Judge Mazzant |
| | § | |
| BRET MCCULLOUGH | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the decision to sanction Mike Jabary's attorney, Nicholas D. Mosser ("Mosser"), for making disrespectful statements to the Court without a basis in fact. Having considered the relevant pleadings, the Court finds that sanctions are appropriate and necessary.

## BACKGROUND

In September 2017, Mosser filed a motion and a reply on behalf of his client, Mike Jabary ("Jabary"), in which the Court identified sanctionable statements. In order to fully understand and explain the statements in the correct context, the Court briefly summarizes the procedural history of the case. In 2009 and 2010, Jabary owned and operated a restaurant and hookah bar, called Jabary Mediterranean, for which he retained a Certificate of Occupancy (the "Certificate"). After about a year, the Certificate was revoked by a notice of violation posted on the door of Jabary Mediterranean. Jabary asserts that his Certificate was improperly revoked.

On December 28, 2010, Jabary filed a pro se complaint in the Eastern District of Texas against the City of Allen ("the City"). Jabary retained Mosser, along with Mosser's father, James C. Mosser of Mosser Law PLLC, and filed Plaintiff's First Amended Complaint on May 13, 2011, against the City and several Individual Defendants (Dkt. #9). On August 24, 2011, Jabary filed Plaintiff's Second Amended Complaint and 7(a) Reply (Dkt. #37), which made clear that Jabary

asserted a takings claim against the City and claims for violation of equal protection, procedural due process, substantive due process, and conspiracy against the Individual Defendants and the City. Without first seeking leave, Jabary improperly filed his Third Amended Complaint on January 19, 2012 (Dkt. #77).

The City filed an answer to Plaintiff's Second Amended Complaint and 7(a) Reply (Dkt. #50). The City (Dkt. #48) and the Individual Defendants (Dkt. #49) also filed motions to dismiss the claims asserted against them in Plaintiff's Second Amended Complaint and 7(a) Reply. The undersigned[1] recommended that the takings claim against the City be dismissed without prejudice, stayed the remaining claims in order for Jabary to exhaust his available state remedies (Dkt. #79), and recommended dismissing the claims against the Individual Defendants (Dkt. #78). Subsequently, Jabary filed his Motion for Sanctions and Memorandum in Support of Motion for Rule 11 Sanctions ("Jabary's Motion for Sanctions") (Dkt. #83) alleging that the assertions the City made in its answer had no basis in law or fact. Jabary supported the motion with emails he had received as a result of an open records request (Dkt. #83). The Honorable Michael H. Schneider[2] adopted the findings and recommendation of the undersigned and, at the same time, denied Jabary's Motion for Sanctions, and struck Jabary's Third Amended Complaint (Dkt. #100). Jabary appealed the order dismissing his claims against the Individual Defendants to the United States Court of Appeals for the Fifth Circuit (Dkt. #120). The Fifth Circuit affirmed in part and reversed in part, holding that Jabary adequately pleaded a due process claim against two of the

---

[1] At the time the motions to dismiss were filed, the undersigned was assigned to the case as United States Magistrate Judge for the Eastern District of Texas. The Honorable Amos L. Mazzant, III served as a United States Magistrate Judge from April 2009 until being appointed as United States District Judge on December 19, 2014. The present case was referred to the undersigned as United States Magistrate Judge on December 28, 2010 (Dkt. #2).

[2] The Honorable Michael H. Schneider served as a United States District Judge for the Eastern District of Texas from September 10, 2004, until October 1, 2016, assuming senior status on January 7, 2016. United States District Judge Michael H. Schneider was assigned to this case from December 28, 2010, until March 19, 2012 (Dkt. #101).

Individual Defendants, Bret McCullough, the City's Chief Building Official ("McCullough"), and Mayor Stephen Terrell ("Terrell") (Dkt. #122). The Fifth Circuit then remanded the case to the district court for further proceedings (Dkt. #122 at p. 18).

Once the case resumed in the district court, Jabary filed Plaintiff's Motion to Compel Discovery and Memorandum in Support ("Jabary's Motion to Compel") (Dkt. #128), seeking discovery on all matters relevant to the remaining claims. The Court denied Jabary's Motion to Compel, reasoning that Fifth Circuit law only allowed for limited discovery on qualified immunity until the facts necessary to rule on the immunity claims were discovered (Dkt. #131). Following the denial of Jabary's Motion to Compel, McCullough and Terrell filed a motion for summary judgment asserting a qualified immunity defense (Dkt. #135). The undersigned recommended that the claims against Terrell be dismissed with prejudice and the case continue as to McCullough because there was a genuine issue of material fact as to whether McCullough committed a due process violation and whether he was entitled to qualified immunity (Dkt. #151). The Honorable Ron Clark[3] adopted the findings and recommendation of the undersigned (Dkt. #182). Subsequently, the City[4] filed a motion for summary judgment (Dkt. #170) and McCullough filed a second motion for summary judgment (Dkt. #171). The undersigned[5] granted the City's motion (Dkt. #205) and denied McCullough's second motion (Dkt. #206), which resulted in the case continuing solely against McCullough. McCullough appealed the denial of qualified immunity

---

[3] The Honorable Ron Clark became a United States District Judge for the Eastern District of Texas on October 10, 2002, became Chief Judge of the Eastern District of Texas on January 1, 2015, and assumed senior status on February 28, 2018. United States District Judge Ron Clark was assigned to the case from March 19, 2012, (Dkt. #101) until January 6, 2015 (Dkt. #193).

[4] Pursuant to the Court's August 8, 2014, Order granting Plaintiff's Motion and Memorandum in Support of Motion to Lift Stay and to Reinstate the Case as to the City of Allen, Texas (Dkt. #158), the Court lifted the previously imposed stay and reinstated Jabary's complaint against the City (Dkt. #161).

[5] At this point in the case, the undersigned was acting as a United States District Judge for the Eastern District of Texas. The Honorable Amos L. Mazzant, III became a United States District Judge for the Eastern District of Texas on December 19, 2014. The case was reassigned to the undersigned on January 6, 2015 (Dkt. #161).

(Dkt. #199; Dkt. #208) and Jabary cross appealed the Court's ruling that granted the City's motion as to the takings claim (Dkt. #226). The Fifth Circuit affirmed the dismissal of the takings claim, with the modification that the dismissal be without prejudice, and dismissed the appeal as to McCullough, asserting it had no jurisdiction to consider an interlocutory review of the genuineness of the issues of fact (Dkt. #229 at pp. 7, 9). The Fifth Circuit then remanded the case for further consideration (Dkt. #229 at p. 9).

Once the case resumed, the Court held a status conference on June 20, 2017, and issued an Amended Scheduling Order on June 30, 2017, which set the deadline for discovery as October 2, 2017, the Final Pretrial Conference for November 9, 2017, and Jury Selection and Trial for November 14, 2017 (Dkt. #231). Over two months later, on September 5, 2017, Mosser, on behalf of Jabary, filed a Motion Requesting Status Conference and Revised Orders on Discovery (Dkt. #235). The reason Jabary filed the motion was to determine what discovery Jabary was permitted to obtain, and to enable discovery on matters outside of qualified immunity (Dkt. #235). McCullough filed a response to the motion (Dkt. #236) and Mosser, on behalf of Jabary, filed a reply (Dkt. #237). In filing his motion and reply, Mosser made several statements that the Court identified as sanctionable statements (Dkt. #239). Accordingly, the Court issued its Order to Show Cause ("Show Cause Order") stating "[p]ursuant to Rule 11(c)(3) and Rule 12(f) of the Federal Rules of Civil Procedure and the Court's inherent power to regulate a party's conduct in a case before it, [Mosser] is hereby **ORDERED** to appear and show cause why he should not be sanctioned for statements asserted in" the briefing regarding the status conference request (Dkt. #239 at p. 1) (emphasis in original). The Show Cause Order stated:

The statements at issue in Dkt. #235 are as follows:

2. The City of Allen, while they were a party to this suit, concealed documents relevant to discovery and relevant to the claims before the court. **The Court was**

**less than concerned about this concealment**. See Docs. 83 & 100 (Emphasis added).

4. Eventually, and despite this Court's rulings blocking discovery and condoning the concealment of documents; Plaintiffs received a treasure trove of documents concerning the conspiracy and backroom politics that deprived Jabary of his right to do business in the City of Allen. Doc. 83. Regardless of the emails and admissions contradicting the sworn affidavits; facts that demonstrated the conspiracy, this Court disregarded *what actually happened*, and held that Plaintiff's accusations that the City of Allen "held private meetings to devise a method of shutting down Jabary Mediterranean," was merely a conclusory statement. Doc. 79[ ](and the numerous other footnotes where the Court disregarded the admissions of the City Officials). The Court ignored emails and other documents that fundamentally demonstrated the City's misconduct and ignored the fundamental contradictions contained in the affidavits used to dismiss Plaintiff's case.

5. Indeed, *__every__* statement the Court believed was conclusory was based on specific facts contained in the emails the City of Allen hid from Plaintiff until the Texas Open Records Request was filed. Compare Doc. 79 with Doc. 83.

6. Even after Plaintiff gave up in the hopes of justice, as facts and admissions by the City of Allen do not amount to factual contentions (instead are merely conclusory statements); Plaintiff sought motions to compel seeking to get discovery, in this case, the Court declined the majority of the discovery. See Docs. 128 and Doc. 131.

7. Furthermore, Plaintiffs do not believe that perjured affidavits should be an acceptable means to dictate the limits of qualified immunity, and certainly should not be the means to restrict this Court from seeking the truth.

8. Plaintiff would like to depose the members of these conclusory "secret" meetings (As described by Docs. 83-1 through 83-28) and the participants of the email chains identified above. However, this court declines to admit those accounts were anything beyond a "conclusory allegation;" despite their plain admission against interest by those persons. See eg., Doc. 78; Doc. 83; Doc. 100. (Footnote omitted but information added).[6]

9. Rather than wasting valuable time drafting discovery, serving subpoenas, and moving to compel responses, Plaintiffs seek clarification at the outset and reserves his time and efforts if the Court refuses to permit justice be done and again deny Jabary his due process.

10. The Court should schedule a Status Conference to determine to what extent Qualified Immunity can bar the truth from being revealed, and to what extent the

---

[6] At the Show Cause Hearing, the Court struck this paragraph as a comment that warranted sanctions.

Court's refusal to consider the email chain will continue to impact Jabary's recovery in this case of clear civil rights violations.

The statements at issue in Dkt. #237 are as follows:

2. Defendants' point to several truthful statements, as being "disrespectful." Doc. 236, pg 1-6. However, Defendants offer nothing to demonstrate how those truthful statements were either disrespectful or how they are inapplicable in the present discovery mess that has been ongoing for the better part of seven years. Id, pg 1-2.[7]

3. Rather, the accuracy of Plaintiff's assertions is telling. Doc. 235. Plaintiff spent far too much time litigating open records requests in a vain effort to gather information related to the conspiracy; while combating the false representations that this Court continually declines to address. See generally, Doc. 83 (accompanying exhibits); Doc. 100. Only through the Texas Open Records Act, was Plaintiff able to receive nearly two-thousand pages of documents, which should have been identified in initial disclosures. These documents demonstrate that the very accusations the Court erroneously disregarded as conclusory; were not only facts (and admissions by Defendants), but demonstrate Defendants' Counsel manufactured false representations to the Court—repeatedly. See Doc. 83 and Doc. 79; See also Doc. 182. Every representation by Defendants before the Court regarding the meetings and whether they happened was false, and formed the basis of the Court's dismissal of many of those statements as conclusory. Doc. 79.

4. Rather, had Defendants complied with Rule 26[], made proper disclosures; and had the court been concerned more with the existence of the emails (demonstrating that every statement the Court disregarded as conclusory was factually true) a different result would have been had. (Footnote omitted).

10. Jeff[re]y's arguments are yet another set of false representations to the Court. Doc. 236, pg 4. Despite Jeffrey's maligning of Plaintiff, Plaintiff has clearly alleged "**Through a Texas Open Records Lawsuit**, Plaintiff has **acquired documents** which indicate this statement is factually not true and a denial is not warranted by the evidence [Doc. 37, ¶ 17]." Doc. 83, pg 4[ ](emphasis added). Moreover, in the recent document, Plaintiff plainly asserted that he spent months litigating over … [an] open records request[]." Doc. 235. It is unclear why this court continues to ignore Jeff[re]y's pleaded falsehoods. However, the Court does. See Doc. 100. (Emphasis in original).

Footnote 3: Indeed, maybe if Jabary had used enough creative adjectives and pretended differently, the Court would have ruled in his favor. Plaintiff has previously complained about the vile nature of Jeff[re]y's pleadings, and those complaints have fallen on deaf ears. Doc. 203. Plaintiff began compiling a list of

---

[7] The Court strikes this paragraph as one that warrants sanctions.

the slurs directed at Plaintiff, but this task was too disturbing to complete. At least Plaintiff's assertions can be directly proved, even if dismissed by the Court.

25. Like much of Jim Jeffrey's writing, his response is a continual game of hide and seek, ignoring the issues, and conflating **actual** facts with what Jeffrey can manufacture to deny relief to Jabary. Doc. 236. Plaintiff did not conduct discovery during this round, and sought an order from the Court, based on the sincerely held belief that, Jeffrey would lie about his cooperation in the matter merely to tell the court that any arguments against qualified immunity "should not be the basis of any relief herein, nor should this be the basis of allowing any discovery." Compare Doc. 236-1, Appx. pg 3 with Doc. 236, pg 4. It is disappointing that these beliefs are continually ratified. (Emphasis in original).

27. Numerous witnesses have perjured themselves by submitting false declarations and affidavits to this Court, Plaintiff has a constitutional right to confront these persons. See Docs. 170-2 (pgs 79-85; 98-108) Doc. 171-1, pgs 79-85 and pgs 98-108. There is no reason this Court should condone Jeffrey's discovery games, false representations, and childish name-calling.

Prayer: Plaintiff prays that this Court grant his "utterly meritless," "bizzare," "misleadingly," "murky," and "indistinguishable" "wad of papers" such that the qualified immunity defense will never be raised with response to a discovery matter before the Court.[8]

(Dkt. #239 at pp. 1–3) (emphasis in original). The Court originally set a show cause hearing for Monday, October 2, 2017, at 12:00 p.m. (Dkt. #239 at p. 3). The Court subsequently rescheduled the hearing ("Show Cause Hearing") for 10:00 a.m. on Friday, October 13, 2017. Mosser filed his Response to Show Cause Order on October 10, 2017 (Dkt. #250). The Court held the Show Cause Hearing on Friday, October 13, 2017.

---

[8] The Court finds this statement is not sanctionable and thus strikes it from its Show Cause Order.

# LEGAL STANDARD

The Federal Rules of Civil Procedure outline how an attorney shall comport himself before a court. Federal Rule of Civil Procedure 11(b) provides that:

> By presenting to[a] court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery
>
> . . .

FED. R. CIV. P. 11(b)(3). "On its own, [a] court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." FED. R. CIV. P. 11(c)(3). However, for Rule 11 purposes, courts must afford the sanctioned party notice and an opportunity to be heard to ensure due process. *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1191 (5th Cir. 1996) (citing *Boddie v. Connecticut*, 401 U.S. 371, 401 (1971); *Spiller v. Ella Smithers Geriatric Ctr.*, 919 F.2d 339, 346–47 (5th Cir. 1990)).

When evaluating Mosser's objectionable contentions, the Court considers the Texas Disciplinary Rules of Professional Conduct and the Eastern District of Texas's Standards of Practice. Under the Texas Disciplinary Rules of Professional Conduct, "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.03(a)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2005) (Tex. State Bar R. art. X, §9). Further, "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory official or public legal officer, or of a candidate

for election or appointment to judicial or legal office."  TEX. DISCIPLINARY RULES PROF'L

CONDUCT R. 8.02(a) *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2005)

(Tex. State Bar R. art. X, §9).

Moreover, attorneys who appear in civil and criminal cases before the Court shall comply

with the following standards of practice in the Eastern District of Texas:

> (B) A lawyer owes, to the judiciary, candor, diligence, and utmost respect.
>
> (C) A lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves.
>
> . . .
>
> (E) Lawyers should treat each other, the opposing party, the court, and members of the court staff with courtesy and civility and conduct themselves in a professional manner at all times.
>
> . . .
>
> (K) Effective advocacy does not require antagonistic or obnoxious behavior, and members of the bar will adhere to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect.

LOCAL RULE AT-3.

Once a court finds that counsel or an unrepresented party has violated Rule 11, it has

discretion to impose an appropriate sanction.  Although the discretion in fashioning an appropriate

sanction is broad, the sanction imposed should be the "least severe sanction" adequate to deter

future violations of Rule 11.  *Merriman*, 100 F.3d at 1194.  Sanctions may be monetary or

nonmonetary, and may include striking the offending exhibit or dismissal of a claim or defense.

*Id.*

## ANALYSIS

After the Court issued its Show Cause Order, Mosser filed a sixty-page response (Dkt. #250). In his response, Mosser claimed that he was "at a loss" because he did not understand how any "of the statements identified in the Court's Order [met] any [of the] requirement[s] for sanctions addressed in [Federal Rule of Civil Procedure] 11(b)(1)-(4)." (Dkt. #250 at p. 7). Because Mosser did not understand what was sanctionable about his comments, the Court started the Show Cause Hearing intending for it to be educational for Mosser, as opposed to imposing sanctions upon Mosser. The Court tasked itself to teach Mosser how his statements violated Rule 11 and disrespected the Court. Unfortunately, Mosser spurned the Court's advice and support. At every turn, Mosser was unapologetic, unwilling to admit that his word choices were disrespectful, and stood firm in his argument that his words were justified. With this backdrop, the Court analyzes whether sanctions are appropriate in this matter.

### I.       Notice and a Reasonable Opportunity to Be Heard

In his response, Mosser argues that he did not get proper notice because "[t]he Court's order cites no specifics on what basis it is issuing the show cause order." (Dkt. #250 at p. 7). Mosser contends that the quoted passages in the Court's Show Cause Order "provide no assistance in Mosser determining what, if any rule, he has violated—since the quotes are predominantly those of opposing counsel, Jim Jeffrey." (Dkt. #250 at p. 7).

Federal Rule of Civil Procedure 11 requires that the "order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." FED. R. CIV. P. 11(c)(6). The notice required for sanctions is based on the conduct sanctioned by the Court. "An attorney who files court papers with no basis in fact needs no more notice than the existence of Rule 11 itself." *Merriman*, 100 F.3d at 1191 (citing *Spiller*, 919 F.2d at 346; *Veillon v. Expl. Servs., Inc.*,

876 F.2d 1197, 1202 (5th Cir. 1989)). "However, where a party files papers in court without any

basis in *law*, due process requires specific notice of the reasons for contemplating sanctions." *Id.*

(emphasis in original) (citing *Spiller*, 919 F.2d at 346–47). "Such notice may take the form of a

personal telephone call, a letter, or a timely Rule 11 motion." *Id.* (citing *Veillon*, 876 F.2d at 1202).

Further, for the sake of Rule 11, due process does not require an actual hearing. *Id.* at 1192.

Rather, the opportunity to respond through written submissions usually constitutes a sufficient

opportunity to be heard. *Id.*

Here, the Court finds, as will be further discussed, that Mosser submitted papers that had

no basis in fact, and as such, Mosser "needs no more notice than the existence of Rule 11 itself."

*Id.* (citing *Spiller*, 919 F.2d at 346; *Veillon*, 876 F.2d at 1202). The Court first notes that Mosser

previously had notice of the existence of Rule 11, as Mosser filed Jabary's Motion for Sanctions

(Dkt. #83). However, the Court additionally issued its Show Cause Order, which provided the

basis for the sanction as Rule 11 and described the sanctioned conduct by directly quoting the

statements the Court found sanctionable (Dkt. #239). Furthermore, the Court gave Mosser the

opportunity to be heard both in writing, through his response (Dkt. #250), and at an approximately

two-hour Show Cause Hearing, which the Court is not required to provide. *Merriman*, 100 F.3d

at 1191. As such, the Court is satisfied that the Court complied with the Rule 11 requirements.

*See Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1184 (E.D. Tex. 1996) (citations omitted).

## II.    Sanctionable Conduct

In an order imposing sanctions, the Court "must specifically describe the conduct thought

to be a violation of Rule 11." *Id.* at 1186 (citations omitted). Accordingly, the Court will detail

the statements it has identified as sanctionable in this order ("Sanctions Order"). As previously

mentioned, the Court looks to Federal Rule of Civil Procedure 11, Texas Disciplinary Rules of

Professional Conduct 3.03 and 8.02, and Local Rule AT-3 when determining whether the comments made in this case are sanctionable. These rules require that statements made to the Court must be (A) based in fact and (B) display respect and civility. The Court addresses each requirement in turn.

Before the Court details the arguments surrounding each statement, the Court addresses one argument that Mosser consistently made throughout the Show Cause Hearing and his briefing. Mosser frequently details the inappropriate and disrespectful comments opposing counsel made toward Mosser, and his co-counsel, during the course of the litigation. However, the basis of the Show Cause Order, Show Cause Hearing, and, now, this Sanctions Order, is the statements that Mosser made that were disrespectful to the Court. Counsel's interactions and conduct toward each other are immaterial for the purposes of the Show Cause Order, Show Cause Hearing, and Sanctions Order. Accordingly, the Court will not engage in an analysis regarding such conduct.

### A. Factual Support

Statements made to the Court must be based in fact with evidentiary support and must be made without reckless disregard to their truth or falsity. FED. R. CIV. P. 11(b)(3); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.03(a)(1); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.02(a). As the Court did in its almost two-hour Show Cause Hearing, the Court will go through each comment it deemed sanctionable and analyze why each statement is factually unsupported.

> ### 1. The City of Allen, While They Were a Party to This Suit, Concealed Documents Relevant to Discovery and Relevant to the Claims Before the Court. *The Court Was Less Than Concerned About This Concealment.*

The Court identified the sentence "the Court was less than concerned about this concealment" as the sanctionable statement in this paragraph. The applicable definition of

"concern" is "to be a care, trouble, or distress to."[9]  MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/concern (March 15, 2018).  Accordingly, Mosser would have to provide evidence of what the Court cared about, or was troubled or distressed by, in order to illustrate his statement is based in fact.  Mosser has failed to do so.

Mosser claims that the Court's denial of Jabary's Motion for Sanctions (Dkt. #100) is factual support for his contention that the Court was "less than concerned" about the alleged concealment (Dkt. #250 at pp. 8–9).  He further maintained that "each and every time Mosser pointed to the emails demonstrating the falsity of the statements made by [Defendants] and their attorney, the Court declined to address it."  (Dkt. #250 at p. 9) (citing Dkt. #132; Dkt. #140). During the Show Cause Hearing, Mosser provided the following documents as examples of times he claims the Court failed to address the concealment of documents, which Mosser claims demonstrate that the Court was "less than concerned" about such concealment: Plaintiff's Response to Defendants' Motion and Brief to Dismiss Third Amended Complaint (Dkt. #88); Jabary's Motion to Compel (Dkt. #128); Plaintiff's Objection to Magistrate Judge's Reports and Recommendations (Dkt. #89); Plaintiff's Motion for Continuance and Memorandum in Support ("Jabary's Motion to Continue") (Dkt. #141); Plaintiff's Response to Defendant the City of Allen's Motion for Summary Judgment (Dkt. #186); Jabary's Motion Requesting Status Conference and Revised Orders on Discovery (Dkt. #235), which initiated the Court's Show Cause Order; Jabary's Opposed Emergency Motion to Extend Discovery (Dkt. #242); Jabary's Response to Previously Unopposed Motion to Extend Deadline (Dkt. #243); and Jabary's Emergency Motion to Compel

[9] This is the third listed definition, but is the definition that is applicable to the context of the sentence.  The other listed definitions are: "to relate to: be about"; "to have influence on"; and "engage, occupy."  MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/concern (March 15, 2018).

Production or Privilege Log (Dkt. #245).[10] At the Show Cause Hearing, Mosser argued that because of the way the Court responded to these motions, the statement that the Court was "less than concerned about this concealment," was the only way he could interpret the Court's reasoning in this case.

This is the exact point of the Court's Show Cause Order, Show Cause Hearing, and, now, Sanctions Order. Mosser's opinion or interpretation of the way the case has proceeded does not provide a factual basis for a statement regarding the intent of the Court. The Court will examine each piece of evidence Mosser offered to support his statement in turn.

### i. Motion for Sanctions (Dkt. #83) and Corresponding Order (Dkt. #100)

Mosser presented Jabary's Motion for Sanctions as evidence that the Court was "less than concerned" with the concealment of documents. Mosser claims that Jabary obtained documents as a result of an open records request that the City concealed from Jabary in his initial disclosure and during the discovery process (Dkt. #250 at p. 8). This conduct formed the basis of Jabary's Motion for Sanctions (Dkt. #83). Mosser maintained that the Court responded to Jabary's Motion for Sanctions against the City with only one line and made no mention of the underlying conduct, which is support for the contention that the Court was "less than concerned" about the concealment (Dkt. #250 at p. 9).

As it pertains to Jabary's Motion for Sanctions, the order states: "[i]t is further **ORDERED** that Plaintiff's Motion for Sanctions and Memorandum in Support of Motion for Rule 11 Sanctions

---

[10] These motions are all referred to in Mosser's Response to Show Cause Order as support for the statement that the "Court continues to ignore Jeffery's pleaded falsehoods." (Dkt. #250 at p. 47). However, during the Show Cause Hearing, Mosser directed the Court to the section regarding his claim that the Court ignored pleaded falsehoods while discussing his statement that the Court was "less than concerned" with the concealment of documents, claiming that these documents also supported this first statement that the Court was "less than concerned" with the concealment of documents.

(Dkt. No. 83) is **DENIED**." (Dkt. #100 at p. 4) (emphasis in original). This offers factual support for the contention that the Court considered the motion and determined that there was no relief it had the authority to grant at the time. However, it does not give any factual support for the contention that the Court did not care, was not troubled by, or was less than distressed about the concealment of documents. As such, this does not provide any factual basis for Mosser's statement.

### ii. Mike Jabary's Motion and Memorandum in Support of Motion for Relief from Judgment (Dkt. #124), Corresponding Report and Recommendation (Dkt. #132), and Order (Dkt. #140)

Mosser claims that Jabary's Motion and Memorandum in Support of Motion for Relief from Judgment ("Jabary's Motion to Alter Judgment") (Dkt. #124) and the Court's corresponding responses to such motion (Dkt. #132; Dkt. #140) provide factual support for his statement. Jabary filed a Motion to Alter Judgment based on the discovery of the documents he alleges the City concealed (Dkt. #124). The Court denied Jabary's Motion to Alter Judgment because the motion was filed over a year after the Court entered judgment, and was, therefore, filed late (Dkt. #132; Dkt. #140). The Court never reached the merits of Jabary's motion (Dkt. #132; Dkt. #140). The Court's denial of a motion as time-barred offers no factual support for Mosser's bold assertion that the Court "was less than concerned," or in other words, not troubled or distressed by the concealment or did not care about the concealment of documents.

### iii. Plaintiff's Response to Defendants' Motion and Brief to Dismiss Third Amended Complaint (Dkt. #88), Plaintiff's Objection to Magistrate Judge's Reports and Recommendations (Dkt. #89), and Corresponding Order (Dkt. #100)

Mosser argues that Jabary's Response to Defendants' Motion and Brief to Dismiss Third Amended Complaint (Dkt. #88) and Plaintiff's Objection to Magistrate Judge's Reports and

Recommendations (Dkt. #89) are examples of times that Jabary complained of the City's concealment of documents and the Court declined to address the conduct.

On January 19, 2012, Jabary improperly filed Plaintiff's Third Amended Complaint, without seeking leave of Court, adding allegations from the alleged concealed documents (Dkt. #77). Despite Plaintiff's Third Amended Complaint, the undersigned issued reports and recommendations granting the Individual Defendants' motion to dismiss Plaintiff's second amended complaint (Dkt. #78) and granting in part the City's motion to dismiss Plaintiff's second amended complaint (Dkt. #79). Subsequently, on February 3, 2012, the Individual Defendants filed their Motion & Brief to Dismiss for Failure to State a Claim ("Individual Defendants' Motion to Dismiss Third Amended Complaint") (Dkt. #86) and Jabary filed a response on February 8, 2012 (Dkt. #88). Then, on February 9, 2012, Jabary filed objections to the reports and recommendations arguing Plaintiff's Third Amended Complaint was the live pleading and arguing that Defendants' answers and motions relied on false statements, which Jabary claimed could be proven false by the concealed documents (Dkt. #89).

The Court struck Plaintiff's Third Amended Complaint because Jabary did not properly seek leave of Court, as required by the Federal Rules of Civil Procedure,[11] and denied as moot the Individual Defendants' Motion to Dismiss Third Amended Complaint (Dkt. #100 at pp. 2–4). The Court went on to say that, had Plaintiff's Third Amended Complaint been properly filed, the amendment, including the allegations from the alleged concealed documents, did not correct the deficiencies identified by Defendants in their prior motions to dismiss (Dkt. #100 at p. 3) (holding "[a] review of the Third Amended Complaint, as well as the new motions to dismiss, leads the Court to the conclusion that this amendment would be futile and does not correct the deficiencies

---

[11] Jabary appealed this ruling and the Fifth Circuit affirmed the Court's order striking the third amended complaint (Dkt. #122 at pp. 4–5).

of the prior complaints."). The Court further overruled the remaining objections and adopted the recommendation of the undersigned (Dkt. #100 at pp. 3–4).

What is absent from this order is any statement from the Court about its internal cares, troubles, or distresses regarding the alleged concealment of documents. As such, Plaintiff's response to the Individual Defendants' Motion to Dismiss Third Amended Complaint (Dkt. #88), Plaintiff's Objection to Magistrate Judge's Reports and Recommendations (Dkt. #89), and the corresponding order (Dkt. #100) give no indication regarding the Court's concerns. Accordingly, these documents do not offer any factual support for Mosser's sanctionable statement.

### iv. Plaintiff's Motion to Compel Discovery and Memorandum in Support (Dkt. #128), Corresponding Order (Dkt. #131), Plaintiff's Motion for Continuance and Memorandum in Support (Dkt. #141), and Corresponding Order (Dkt. #150)

Mosser contends that Jabary's Motion to Compel (Dkt. #128) and Jabary's Motion to Continue (Dkt. #141) prove that the Court was "less than concerned" with the City's conduct in this case.

When Jabary filed his Motion to Compel, he made no mention of the City's concealment of documents; Jabary instead complained that McCullough and Terrell limited their participation in discovery to qualified immunity (Dkt. #128). Jabary argued that discovery should be open as to all relevant matters because the Fifth Circuit already determined that McCullough and Terrell were not entitled to qualified immunity in this case (Dkt. #128). However, the Fifth Circuit only held that "*[i]n this matter on appeal*, these two defendants can cite no 'extraordinary circumstances' to prove that they 'neither knew nor [that they] should have known' of Jabary's right to due process. . . . As such, the defendants have not, *on appeal*, demonstrated a right to qualified immunity." (Dkt. #122 at p. 16) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982)) (emphasis added). With that, the Court denied Jabary's Motion to Compel (Dkt. #131 at

p. 2). The Court found that the issue of qualified immunity was not yet settled and Fifth Circuit precedent only permitted limited discovery on the issue of qualified immunity until the facts needed to rule on the immunity claims were uncovered (Dkt. #131 at p. 2).[12] After the Court entered its order denying Jabary's Motion to Compel (Dkt. #131), Jabary filed a Motion to Continue because of the parties' disagreement as to the scope of discovery (Dkt. #141). Again, Jabary never referenced or sought relief based on the concealment of documents in this motion (Dkt. #141). The Court denied Jabary's Motion to Continue (Dkt. #150).

Neither motion asks the Court to grant any relief based on the alleged concealment of documents, or even mentions the concealment of documents (Dkt. #128; Dkt. #141). Accordingly, the Court's denial of these requests do not indicate the Court's thoughts or feelings on the concealment of documents. Therefore, the same provides no factual support for the statement that the Court was "less than concerned" with the City's concealment of documents.

     **v.**     **Plaintiff's Response to Defendant the City of Allen's Motion for Summary Judgment (Dkt. #186) and Corresponding Order (Dkt. #205)**

Mosser asserts that the Court declined to address the City's conduct when Jabary raised the concealment of documents in his response to the City's motion for summary judgment (Dkt. #186). In response to the City's motion for summary judgment, Jabary objected to summary judgment evidence for a variety of reasons, one of those being that emails obtained in the open records request disproved the statements made in McCullough's declaration. *See, e.g.*, (Dkt. #186 at pp. 16, 19–20). The Court overruled Plaintiff's objections to the documents, without commenting on the underlying reasons for its decision, because it did not rely on the evidence (Dkt. #205 at

---

[12] Even if the motion had referenced the concealment of documents, the Court limited discovery to qualified immunity, which was the only discovery the Fifth Circuit allowed (Dkt. #131). Accordingly, the Court's ruling was not an indication it was "less than concerned" with the concealment of documents; it was only an indication the Court followed Fifth Circuit precedent.

p. 6 n.4) (explaining that if the Court relied on any of the objected-to evidence, the Court would do an analysis of the objection at the time it used the evidence). The Court did not overrule the objections because it was less than troubled by a party concealing documents; the Court overruled the objection because it did not rely on the evidence.

This is further supported by the Court's holding in regards to the City's motion for summary judgment. As to the takings claim, the Court held that such claim was barred by res judicata, collateral estoppel, and was not ripe (Dkt. #205 at pp. 10–12).[13] As to the due process claim, the Court found that the evidence did not prove that McCullough was a policymaker, and there was no official policy to deny due process; accordingly, the City could not be liable for any due process violation under § 1983 (Dkt. #205 at pp.13–15). This decision was based on the City's charter and the City's land development code, not on McCullough's declaration. Again, absent from the Court's order is any comment that it did not care that the City was concealing documents or that it had no concern for whether or not the City was concealing documents (Dkt. #205). Therefore, this response and corresponding order provide no factual support for the contention that the Court was "less than concerned" with the concealment of documents.

### vi. Motion Requesting Status Conference and Revised Orders on Discovery (Dkt. #235)

Mosser maintains that Jabary's Motion Requesting Status Conference and Revised Orders on Discovery (Dkt. #235) is an example of an occasion where Jabary complained of the concealment of documents and the Court declined to address the concealment.

In his motion requesting a status conference, which is one of the two documents that initiated the Show Cause Order, the Show Cause Hearing, and this Sanctions Order, Jabary did

---

[13] Jabary appealed the Court's dismissal of the takings claim. The Fifth Circuit agreed that the takings claim was not ripe (Dkt. #229 at p. 9). Accordingly, the Fifth Circuit affirmed the dismissal but modified the dismissal to a dismissal without prejudice because the claim was not ripe (Dkt. #229 at p. 9).

reference the concealment of documents—namely in making this sanctionable statement, and many other sanctionable statements, to the Court. However, the only relief Jabary asked for was a status conference and revised orders on discovery (Dkt. #235). The Court granted such request. The Court held a status conference after the Show Cause Hearing on October 13, 2017. During the status conference, the Court clarified that discovery was open to all relevant matters and had been open since the issue of qualified immunity was settled, which was when the Fifth Circuit remanded the case for further proceedings after affirming the Court's rulings on the motions for summary judgment. The Court had already discussed this issue with the parties at the June 20, 2017 status conference. The Court granted all the relief Jabary requested in his motion. At no point did the Court discuss its internal thoughts, feelings, cares, troubles, or distresses regarding the concealment of documents. As such, this motion does not offer any proof for Mosser's sanctionable word choice concerning the Court's inner thoughts or concerns.

        **vii.**    **Jabary's Opposed Emergency Motion to Extend Discovery (Dkt. #242), Jabary's Response to Previously Unopposed Motion to Extend Deadline (Dkt. #243), and Jabary's Emergency Motion to Compel Production or Privilege Log (Dkt. #245)**

Mosser avers that Jabary's Opposed Emergency Motion to Extend Discovery (Dkt. #242), Jabary's Response to Previously Unopposed Motion to Extend Deadline (Dkt. #243), and Jabary's Emergency Motion to Compel Production or Privilege Log (Dkt. #245) are all examples of times that Jabary pointed to the alleged concealment of documents and the Court declined to address the conduct. While these documents do reference the shielding or concealment of documents, the Court had not yet ruled on the motions prior to the Show Cause Hearing. After the Show Cause Hearing, the Court held a status conference to discuss the pending matters. During the status conference, the Court made clear that it was not extending the trial deadline but would allow for discovery past the discovery deadline. Further, the Court ruled on Jabary's Emergency Motion to

Compel Production or Privilege Log after reviewing privilege logs and documents *in camera* (Dkt. #268). The Court granted the motion in part, only preventing discovery of information that was privileged (Dkt. #268). Nothing the Court did in ruling on these motions provides factual support for the contention that the Court "was less than concerned" with the concealment of documents. In fact, the Court granted most of the relief Jabary sought in these motions. As this was Mosser's last offer of proof supporting his first sanctionable statement, the Court finds there is no factual support for the statement, and it is a violation of Rule 11.

    **2. Eventually, and *Despite This Court's Rulings* Blocking Discovery and *Condoning the Concealment of Documents*; Plaintiff[] Received a Treasure Trove of Documents Concerning the Conspiracy and Backroom Politics That Deprived Jabary of His Right to Do Business in the City of Allen. Regardless of the Emails and Admissions Contradicting the Sworn Affidavits; Facts That Demonstrated the Conspiracy, *This Court Disregarded What Actually Happened*, and Held That Plaintiff's Accusations That the City of Allen "Held Private Meetings to Devise a Method of Shutting Down Jabary Mediterranean," Was Merely a Conclusory Statement. *The Court Ignored Emails and Other Documents That Fundamentally Demonstrated the City's Misconduct and Ignored the Fundamental Contradictions Contained in the Affidavits Used to Dismiss Plaintiff's Case*.**

There are three separate comments that the Court recognized as sanctionable in this paragraph. Mosser provided distinct evidence for all three statements; as such, the Court will separate the analysis by the three different sanctionable statements.

    **i.    Despite This Court's Rulings . . . Condoning the Concealment of Documents**

Condone means "to regard or treat (something bad or blameworthy) as acceptable, forgivable, or harmless." Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/condone (March 15, 2018). Accordingly, Mosser has to produce evidence to suggest how the Court regarded or treated the City's alleged concealment of documents as acceptable, forgivable, or harmless. Mosser claims that Jabary's Motion for Sanctions (Dkt. #83),

the City's Response Opposing Plaintiff's Motion for Sanctions (Dkt. #96), and the Court's corresponding order (Dkt. #100) prove that the Court condoned the concealment of documents (Dkt. #250 at p. 11).

As the Court previously noted,[14] Jabary's Motion for Sanctions and the corresponding order offer no factual support for the Court's motive behind making its ruling on Jabary's Motion for Sanctions. The order does not state that it was treating any alleged concealment of documents as acceptable, forgivable, or harmless (Dkt. #100). The Court considered the motion and denied it (Dkt. #100). Such order does not provide sufficient factual support for the statement that the Court was "condoning the concealment of documents."

To the extent that Mosser offers any of the documents the Court previously examined to support the statement that the Court was "less than concerned" with the concealment of documents, that evidence is equally unavailing to provide factual support that the Court condoned the concealment of documents. Accordingly, this statement does not have any factual support and is in violation of Rule 11.

### ii. This Court Disregarded What Actually Happened

Mosser argues that in making recommendations on the motions to dismiss, the undersigned disregarded several statements as conclusory. Mosser further contends that the concealed documents prove that each and every statement the Court disregarded as conclusory actually happened (Dkt. #250 at pp. 15–25). During the Show Cause Hearing, Mosser also referred to the Court's actions in striking Jabary's Third Amended Complaint (Dkt. #100), the Court's ruling on Jabary's Motion to Alter Judgment (Dkt. #132; Dkt. #140), the Court's order on Jabary's Motion to Compel (Dkt. #131), Jabary's Opposed Emergency Motion to Extend Discovery (Dkt. #242),

---

[14] While the Court did not previously address the City's response to the motion for sanctions, the response does not change the analysis for the purposes of this Sanctions Order.

Jabary's Response to Previously Unopposed Motion to Extend Deadline (Dkt. #243), and Jabary's Emergency Motion to Compel Production or Privilege Log (Dkt. #245). The Court has previously addressed why these motions and corresponding orders did not offer factual support for the statement that the Court was "less than concerned" about the concealment of documents, and they similarly do not provide any factual support for the statement that the "Court disregarded what actually happened." None of these motions, responses, or corresponding orders provide any information concerning what the Court regarded or disregarded in making its decision, except for the reports and recommendations on the motions to dismiss (Dkt. #78; Dkt. #79). In recommending that the Court grant the Individual Defendants' motion to dismiss and grant in part the City's motion to dismiss, the undersigned identified thirty statements in Plaintiff's Second Amended Complaint and Rule 7(a) Reply as conclusory and, thus, "disregard[ed the statements] in considering the motion [to dismiss]." (Dkt. #78; Dkt. #79). Accordingly, the Court will engage in further analysis as to the reports and recommendations on the motions to dismiss.

The Supreme Court of the United States has established a two-step approach for courts to apply when considering a Rule 12(b)(6) motion to dismiss. First, the Court should identify and disregard conclusory allegations for they are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009). Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* Therefore, in making the recommendations, the undersigned looked to Plaintiff's Second Amended Complaint and Rule 7(a) Reply and determined that certain statements were conclusory.[15] Accordingly, the

---

[15] The Court notes that the Fifth Circuit considered the interlocutory appeal, and reversed this Court's decision as to two of the Individual Defendants, McCullough and Terrell, as to the procedural due process claim. In so doing, the Fifth Circuit did not hold that the Court inappropriately disregarded statements as conclusory, but found that Jabary had a protected property interest in his Certificate, that he was not afforded sufficient procedures for the revocation of such Certificate, and that it was plausible McCullough and Terrell were personally involved (Dkt. #122 at pp. 8–12). The statements the Court disregarded as conclusory did not involve these determinations. The Fifth Circuit did hold that statements made in support of Jabary's conspiracy claim were "conclusory in nature." (Dkt. #122 at p. 17).

Court disregarded the conclusory statements *for the purpose of ruling on the motions to dismiss* (Dkt. #78; Dkt. #79) as required when analyzing a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679–80. While the Court may have disregarded certain conclusory statements for purposes of ruling on a motion to dismiss, this does not provide factual support for the contention that the Court disregarded what actually happened.[16]

### iii. The Court Ignored Emails and Other Documents that Fundamentally Demonstrated the City's Misconduct and Ignored the Fundamental Contradictions Contained in the Affidavits Used to Dismiss Plaintiff's Case.

Mosser claims that the Court's order on Jabary's Motion for Sanctions (Dkt. #100), the striking of Plaintiff's Third Amended Complaint (Dkt. #100), and the motions for summary judgment provide a factual basis for the statement that the Court ignored contradictions and evidence in this case (Dkt. #250 at pp. 25–26). Mosser claims that the contradictions between McCullough's declaration and deposition are apparent, and the Court has yet to address the contradictions (Dkt. #250 at p. 26). He further claims that the declarations are "clearly a sham, [but] this Court did not believe so." (Dkt. #250 at p. 26). To support this claim, Mosser cited the following explanation and excerpts of the Court's rulings on McCullough and Terrell's motion for summary judgment: "Doc. 182, ('Magistrate Judge overruled Plaintiff's objections to the declaration, and found that the "deposition of McCullough closely follows the statements made in

---

However, the Fifth Circuit declined to engage in an in-depth analysis of "Jabary's claims regarding an alleged conspiracy to deprive him of his Certificate by way of police harassment, because that conduct did not result in an actual deprivation necessary to support a conspiracy claim under § 1983 to deny him due process of law." (Dkt. #122 at p. 17).

[16] Moreover, in ruling on the motions to dismiss, the emails Mosser claims the Court ignored were not attached to the second amended complaint or referenced by the second amended complaint. Accordingly, it would have been improper for the Court to consider them. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (holding that the Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

his affidavit. . ." [Doc. #151 at 9].'); But see, Doc. 182, pg 5 ('This is quite different testimony from that contained in McCullough's declaration.')." (Dkt. #205 at p. 26) (alterations in original).

As an initial matter, the first sentence quoted from the Order Adopting Report and Recommendation of United States Magistrate Judge (Dkt. #182) is the Court's summary of Defendants' objections. (Dkt. #182 at p. 3); *accord* (Dkt. #153 at p. 8). Further, the undersigned overruled Jabary's objections to McCullough's affidavit because it did not use the affidavit in making the recommendation (Dkt. #151 at p. 1 n.1). The undersigned did not overrule the objection because it did not believe the declaration was a sham; it simply did not use the declaration. Moreover, the statement quoted from the undersigned's report and recommendation reflects the undersigned's reasoning for allowing Jabary to supplement his response. Jabary filed Plaintiff's Opposed Motion and Memorandum in Support for Leave to Supplement its Response to Defendants' Motion for Summary Judgment (Dkt. #146) to include McCullough's deposition as part of the summary judgment record. The undersigned allowed the supplement, finding it would not cause any prejudice, would be helpful in resolving the motion, and was not the result of any improper purpose or delay (Dkt. #151 at p. 9). The undersigned then, using McCullough's deposition, recommended denial of the motion for summary judgment as to McCullough, in part, because there was a genuine issue of material fact as to whether exigent circumstances existed (Dkt. #151 at p. 17). Turning to the next sentence Mosser quoted from the Order Adopting Report and Recommendation of United States Magistrate Judge (Dkt. #182), the Court acknowledged the contradictions between the declaration and the deposition and found this created a fact issue (Dkt. #182 at p. 5). This is quite the opposite of "ignor[ing] . . . fundamental contradictions." Mosser's proffered evidence disproves his assertion.

At the hearing, Mosser also argued that every single dispositive motion, the Court's corresponding rulings, Jabary's Motion for Sanctions (Dkt. #83), and the Court's order striking Plaintiff's Third Amended Complaint (Dkt. #100) all prove that the Court ignored the emails and the contradictions contained in the affidavits.[17] When pressed on the evidence at the Show Cause Hearing, Mosser asserted that there was no other way to interpret what has happened in this case, maintaining that if the Court had considered the evidence, the Court would not have ruled as it did. Mosser repeatedly faces the same problem: his interpretation of how the case has proceeded is not factual support for the contention that the Court ignored emails, other documents, and/or fundamental contradictions. The Court has previously detailed why the rulings on the dispositive motions (Dkt. #78; Dkt. #79; Dkt. #100; Dkt. #151; Dkt. #182; Dkt. #205),[18] the order on Jabary's Motion for Sanctions (Dkt. #100), and the Court's order striking Plaintiff's Third Amended Complaint (Dkt. #100) do not provide factual support for the inner thoughts of the Court, and that analysis equally applies to why these motions and orders do not provide factual support for the decision-making process of the Court. These motions, responses, and orders do not state that the Court ignored any evidence when makings its rulings.[19]

To the extent Mosser offers any of the documents the Court previously addressed, that evidence is similarly unavailing to provide factual support regarding the Court's decision-making process and what it considered or did not consider in making its rulings. Mosser has no factual

---

[17] While making this argument, Mosser made yet another sanctionable statement, claiming that the Honorable Michael H. Schneider failed to consider all of the evidence submitted in support of Jabary's motions. The Court does not add this to the list of sanctionable statements because it was not part of the Court's Show Cause Order.

[18] The Court also ruled on McCullough & Terrell's Second Motion for Summary Judgment (Dkt #206). This order has not been previously addressed by the Court in this Sanctions Order; however, the Court denied the motion as it was the second motion based on the same set of facts and arguments as the first motion for summary judgment and the first ruling was not arbitrary or an abuse of discretion (Dkt. #206 at p. 4). Accordingly, this order would offer no support for any of the contentions that Mosser made against the Court.

[19] As previously discussed, the reports and recommendations regarding the Defendants' motions to dismiss state that certain conclusory statements were disregarded when ruling on the motions to dismiss, as is required by Supreme Court and Fifth Circuit precedent.

support for the contention that the Court ignored any evidence, documents, or facts when making its rulings in this case. Indeed, the evidence Mosser used to support his word choice demonstrates that his statement is completely unsupported and false. Therefore, this statement is sanctionable under Rule 11.

> ### 3. Indeed, Every Statement the Court *Believed* Was Conclusory Was Based on Specific Facts Contained in the Emails the City of Allen Hid from Plaintiff Until the Texas Open Records Request Was Filed.

The definition of "believe" is "to consider to be true or honest." MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/believe (March 15, 2018). Thus, Mosser would need to provide factual support for the Court's inner thoughts on what it considered to be true or honest. Mosser argues that when the undersigned's reports and recommendations on the motions to dismiss are compared with the emails Jabary obtained through the open records request, this statement is factually supported. As the Court previously analyzed, the reports and recommendations on the motions to dismiss (Dkt. #78; Dkt #79), and the order adopting those recommendations (Dkt. #100), do not provide any support for the Court's thoughts; they similarly do not provide support for what the Court considered to be true or honest, or, in other words, what the Court believes. The Court agrees that it found[20] certain statements to be conclusory and that the reports and recommendations and corresponding order support that statement; however, they provide no insight into the Court's inner thoughts or beliefs.

To the extent that Mosser offers any of the documents the Court previously considered, that evidence is likewise unsuccessful in providing factual support for what the Court "believed." Accordingly, this statement does not have any factual support and is in violation of Rule 11.

---

[20] During the hearing, the Court attempted to explain to Mosser that using the word "found" would have been a more appropriate and factually supported word to use in this context; however, Mosser failed to understand the difference between the Court's internal beliefs and the findings the Court makes in its rulings.

**4.** *Even After Plaintiff Gave Up in the Hopes of Justice*, **as Facts and Admissions by the City of Allen Do Not Amount to Factual Contentions (Instead are Merely Conclusory Statements); Plaintiff Sought Motions to Compel Seeking to Get Discovery, in This Case, the Court Declined the Majority of the Discovery. . . . Furthermore, Plaintiffs Do Not Believe That Perjured Affidavits Should Be an Acceptable Means to Dictate the Limits of Qualified Immunity, and Certainly Should Not Be the Means to** *Restrict This Court from Seeking the Truth.*

The Court reads the next two sanctionable statements together to state that "Plaintiff gave up in the hopes of justice" because this Court is not "seeking the truth." In his response, Mosser clarified that Jabary had not given up hope, but that this statement came from Mosser's own depression and frustration (Dkt. #250 at p. 28). He continued on to argue that Jabary's Motion to Compel (Dkt. #128), the corresponding order (Dkt. #131), and the report and recommendation that recommended granting the Individual Defendants' motion to dismiss (Dkt. #78) demonstrate how the proceedings in this case accurately represent the statement that he made. Mosser additionally argues that the Court's order on Jabary's Motion for Sanctions (Dkt. #100) is factual support for the contention that the Court is not seeking the truth in this matter. During the hearing, Mosser also referenced the Court's denial of Jabary's Motion to Alter Judgment (Dkt. #132; Dkt. #140).

These statements cannot be proven in fact. As previously stated, the Court denied Jabary's Motion for Sanctions, as it deemed no relief was appropriate at the time the motion was filed (Dkt. #100). The Court ruled on the motions to dismiss as the Court determined was correct according to the law (Dkt. #78; Dkt. #79; Dkt. #100). The Fifth Circuit affirmed in part and reversed in part, and at that point the Court resumed the case as to the defendants the Fifth Circuit deemed appropriate (Dkt. #122). Further, the Court ruled on Jabary's Motion to Compel, only allowing discovery permitted by Fifth Circuit precedent (Dkt. #131). Lastly, Jabary's Motion to Alter Judgment was denied as untimely (Dkt. #132; Dkt. #140). Even though he attempted to do so, Mosser cannot point to anything in the record to support the contention that the Court was not

permitting justice to be done and was not seeking the truth in this case. The Court followed the law as it applied to this case.

To the extent that Mosser offers any of the documents the Court previously analyzed herein, that evidence is equally unavailing to provide factual support for the contention that the Court did not seek the truth in this case and was not administering justice. Accordingly, this statement does not have any factual support and is in violation of Rule 11.

>    **5. Rather Than Wasting Valuable Time Drafting Discovery, Serving Subpoenas, and Moving to Compel Responses, Plaintiffs Seek Clarification at the Outset and Reserves His Time and Efforts *if the Court Refuses to Permit Justice Be Done and Again Deny Jabary His Due Process*.**

The Court identified the statement "if the Court refuses to permit justice be done and again deny Jabary his due process" as the sanctionable statement in this sentence. In his response, Mosser does not offer any factual support for this statement[21] but, at the Show Cause Hearing, he suggested that Jabary's Motion to Compel (Dkt. #128) offered factual support for this statement.

As the Court previously noted, the Court denied Jabary's Motion to Compel, only permitting discovery on qualified immunity because that was all that was allowed at that stage of the proceeding pursuant to Fifth Circuit law (Dkt. #131). Jabary never filed another motion asking the Court to reconsider or another motion to compel at a later date.[22] Even though there was no specific motion, the Court opened discovery as to all relevant matters after the case resumed in the district court when the Fifth Circuit remanded after summary judgment. The issue was discussed at the June 20, 2017 status conference and the Court issued an Amended Scheduling Order listing

---

[21] In his response, Mosser focuses on the conduct by opposing counsel toward him and his co-counsel (Dkt. #250 at pp. 32–33). As the Court previously stated, the Court will not engage in an analysis of this argument as it is not the reason for the Court's Show Cause Order.

[22] Jabary did filed his Emergency Motion to Compel Production or Privilege Log (Dkt. #245), which the Court granted in part. However, Mosser refers to times in this litigation prior to the filing of this motion. Jabary filed no motion prior to this motion.

the discovery deadline as October 2, 2017 (Dkt. #231). The Court acted in accordance with Fifth Circuit law. Accordingly, such actions do not support the contention that the Court refused to permit that justice be done or denied Jabary his due process rights.

To the extent that Mosser offers any of the documents the Court previously detailed herein, that evidence is similarly unpersuasive to provide factual support that the Court refused to permit that justice be done. Therefore, the statement that the "Court refuses to permit justice be done" and is repeatedly "deny[ing] Jabary his due process" is factually unsupported and sanctionable under Rule 11.

> **6. The Court Should Schedule a Status Conference to Determine to What Extent Qualified Immunity Can Bar the Truth from Being Revealed, *and to What Extent the Court's Refusal to Consider the Email Chain Will Continue to Impact Jabary's Recovery in This Case of Clear Civil Rights Violations*.**

The Court identified the statement that the "Court[] refus[ed] to consider the email chain," as the sanctionable comment in this sentence. In his response, Mosser failed to identify any factual support for this statement,[23] but during the Show Cause Hearing, he referenced McCullough and Terrell's motion for summary judgment (Dkt. #135) and the Court's corresponding rulings regarding exigent circumstances (Dkt. #151; Dkt. #182). Mosser emphasized that this motion and the corresponding rulings provide factual support because, even though nothing in the text of the report and recommendation or order adopting stated the Court refused to consider the emails, Mosser asserts that the Court would have ruled differently if it had considered the emails. Mosser stressed that the effect of the rulings provide the factual support for this statement.

Once again, Mosser relies on his own perception of what the Court did and why the Court ruled in the manner that it did. In ruling on a motion for summary judgment, the Court must

---

[23] Mosser's response focused on opposing counsel's conduct; as such, the Court will not analyze the argument Mosser made in his response.

consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Nowhere in the report and recommendation does it state that the undersigned refused to consider the email chain (Dkt. #151). To the contrary, the undersigned referenced the emails attached to Plaintiff's Response to Defendants' Motion for Summary Judgment (Dkt. #151 at pp. 3, 12). With the evidence before the Court and without making any credibility determinations or weighing the evidence, the undersigned recommended that the Court should deny the motion for summary judgment against McCullough, finding that there was a fact issue for the jury to decide (Dkt. #151 at pp. 17, 32) and the Court adopted such recommendation (Dkt. #182).

Further, Mosser's claim that the Court would have ruled differently on the motion for summary judgment regarding exigent circumstances if the Court had considered the emails is perplexing. The Court denied the motion for summary judgment as to McCullough. The Court found there were genuine issues of material fact, specifically regarding exigent circumstances (Dkt. #151 at pp. 17–18; Dkt. #182 at p. 5). The Court could not grant summary judgment in Jabary's favor because he never filed a motion for summary judgment.

If Mosser is referring to the fact that the Court would have ruled differently on Terrell's motion for summary judgment, this argument is contradicted by the fact that the undersigned specifically referenced the emails in the recommendation to grant Terrell's motion (Dkt. #151 at p. 12). If Mosser is referring to the City's motion for summary judgment, the Court granted summary judgment as to the takings claim based on res judicata, collateral estoppel, and ripeness; and as to the due process claim, because McCullough was not a policymaker. This decision was based not on declarations that can allegedly be proven by emails to be lies, but instead on the City's

charter and the City's land development code. Nothing about these rulings suggests that the Court refused to consider the emails attached to the motion for summary judgment.

To the extent that Mosser offers any of the documents the Court previously examined, that evidence is likewise fruitless to provide factual support that the Court refused to consider evidence. Accordingly, this statement does not have any factual support and is in violation of Rule 11.

> **7. Rather, the Accuracy of Plaintiff's Assertions Is Telling. Plaintiff Spent Far Too Much Time Litigating Open Records Requests in a Vain Effort to Gather Information Related to the Conspiracy;** *While Combating the False Representations That This Court Continually Declines to Address.* **Only through the Texas Open Records Act, was Plaintiff Able to Receive Nearly Two-Thousand Pages of Documents, Which Should Have Been Identified in Initial Disclosures. These Documents Demonstrate That the Very Accusations the Court Erroneously Disregarded as Conclusory; Were Not Only Facts (and Admissions by Defendants), but Demonstrate Defendants' Counsel Manufactured False Representations to the Court—Repeatedly. Every Representation by Defendants Before the Court Regarding the Meetings and Whether They Happened Was False, and Formed the Basis of the Court's Dismissal of Many of Those Statements as Conclusory.**

The Court identified the statement that "this Court continually declines to address" "false representations" as the sanctionable statement in this paragraph. In this context, address means "to direct the efforts or attention of (oneself)" or "to deal with." MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/address (March 15, 2018). Accordingly, Mosser would have to provide factual support for the contention that the Court continually declined to deal with the false representations or continually declined to direct its efforts or attention toward the false representations. In his response to the Show Cause Order, Mosser again referenced Jabary's Motion for Sanctions (Dkt. #83) and the corresponding order (Dkt. #100) as evidentiary support for his statements. He also compared the Individual Defendants' various responses with Jabary's Motion for Sanctions and Opposed Emergency Motion to Extend Discovery (Dkt. #242). During the hearing, Mosser additionally discussed

Jabary's Motion to Compel (Dkt. #128) and the Court's corresponding order (Dkt. #131) as factual support for this statement.

Whether or not the Court specifically referenced the conduct in ruling on Jabary's Motion for Sanctions bears no weight on whether the Court dealt with or directed its efforts or attention to the alleged false representations. The simple fact that the Court denied Jabary's Motion for Sanctions does not provide any support for the contention that the Court declined to direct its attention or efforts toward false representations. Indeed, the Order demonstrates that the Court directed its attention and efforts to false representations by denying Jabary's Motion for Sanctions.

Further, comparing the Individual Defendants' answers to a motion to extend discovery does not provide any evidence of what the Court "address[ed]." There was nothing for the Court to "address" aside from granting the motion to extend discovery, which in fact the Court did at the status conference after the Show Cause Hearing. Finally, as has been previously discussed, the Court allowed for the discovery permitted at the relevant times. These motions and orders offer no factual support for the statement that the Court "continually decline[d] to address" false representations or, in other words, that the Court declined to direct its attention to or declined to deal with false representations.

To the extent that Mosser offers any of the documents the Court previously scrutinized, that evidence is equally unavailing to provide factual support that the Court declined to address false representations. Accordingly, this statement does not have any factual support and is in violation of Rule 11 and is sanctionable.

8. **Rather, Had Defendants Complied with Rule [26], Made Proper Disclosures; and *Had the Court Been Concerned More with the Existence of the Emails (Demonstrating That Every Statement the Court Disregarded as Conclusory Was Factually True) a Different Result Would Have Been Had.***

The sanctionable statement identified by the Court in this sentence is: "had the Court been concerned more with the existence of the emails . . . a different result would have been had." This statement is similar to the first sanctionable statement identified by the Court, that the Court was "less than concerned" with the concealment of documents. Mosser again identifies Jabary's Motion for Sanctions (Dkt. #83) and the corresponding order denying the motion (Dkt. #100) as factual support for this statement. Yet again, this motion and corresponding order fail to prove that the Court was not concerned with the emails or, in other words, did not care, was not troubled by, or was less than distressed about the emails. Mosser continually relies on his opinion of why the Court did what it did, which is not appropriate factual support.

To the extent that Mosser offers any of the documents the Court previously considered, that evidence is similarly unavailing to provide factual support for the assertion that the Court was not concerned with the emails. Accordingly, this statement does not have any factual support and is in violation of Rule 11. This statement is therefore sanctionable under Rule 11.

9. **[Jeffrey's] Arguments Are Yet Another Set of False Representations to the Court. Despite Jeffrey's Maligning of Plaintiff, Plaintiff Has Clearly Alleged "Through a Texas Open Records Lawsuit, Plaintiff Has Acquired Documents Which Indicate This Statement Is Factually Not True and a Denial Is Not Warranted by the Evidence." Moreover, in the Recent Document, Plaintiff Plainly Asserted That He Spent Months Litigating Over … [an] Open Records Request[].** *It Is Unclear Why This Court Continues to Ignore [Jeffrey's] Pleaded Falsehoods. However, the Court Does.*

The last two sentences of the paragraph are the statements the Court identified as sanctionable. In response to the Show Cause Order, Mosser argues that he "repeatedly prayed for the Court's intervention, pointed to specifics, and even called upon the State Bar to assist—none

have addressed the conduct that persists even today." (Dkt. #250 at p. 47). In support of his argument, Mosser cites Jabary's Motion for Sanctions (Dkt. #83), Plaintiff's Response to Defendants' Motion and Brief to Dismiss Third Amended Complaint (Dkt. #88), Plaintiff's Objection to Magistrate Judge's Reports and Recommendations (Dkt. #89), Jabary's Motion to Continue (Dkt. #141), Plaintiff's Response to Defendant the City of Allen's Motion for Summary Judgment (Dkt. #186), Jabary's Motion Requesting Status Conference and Revised Orders on Discovery, which initiated the Court's Show Cause Order, (Dkt. #235), Jabary's Opposed Emergency Motion to Extend Discovery (Dkt. #242); Jabary's Response to Previously Unopposed Motion to Extend Deadline (Dkt. #243); and Jabary's Emergency Motion to Compel Production or Privilege Log (Dkt. #245).

The Court has previously addressed each of these alleged supporting documents and analyzed why they failed to provide support for the allegation that the Court was "less than concerned" with the concealment of documents. This analysis applies with equal weight to why they fail to provide factual support for the accusation that the Court "continues to ignore Jeffrey's pleaded falsehoods." None of these documents offers any support for the decision-making process or the inner thoughts of the Court. To the extent that Mosser offers other documents the Court previously inspected, that evidence is also unconvincing in providing factual support that the Court ignored any pleaded falsehoods. Thus, this statement is also factually unsupported and a violation of Rule 11, which warrants sanctions.

10. ***Indeed, Maybe if Jabary Had Used Enough Creative Adjectives and Pretended Differently, the Court Would Have Ruled in His Favor*. Plaintiff Has Previously Complained About the Vile Nature of [Jeffrey's] Pleadings, and Those Complaints Have Fallen on Deaf Ears. Plaintiff Began Compiling a List of the Slurs Directed at Plaintiff, but This Task Was Too Disturbing to Complete. At least Plaintiff's Assertions Can Be Directly Proved, Even if Dismissed by the Court.**

The Court identified Mosser's sanctionable statement, perhaps his most offensive statement, in this paragraph as, "[i]ndeed, maybe if Jabary had used enough creative adjectives and pretended differently, the Court would have ruled in his favor."[24] In his response, Mosser identifies several times that opposing counsel used colorful language, and Mosser argues that the Court never addressed such language.[25] During the hearing, Mosser claimed that the entire record of this case and every motion supports this statement. When pressed for a specific example, the only one Mosser could offer was the Court's order on Jabary's Motion to Compel (Dkt. #131).

In the Court's order on Jabary's Motion to Compel, the Court briefly summarized the parties' arguments. In so doing, the Court explained:

> Defendants assert that Plaintiff's Motion, for the first time, *pretends* that Plaintiff is now seeking discovery only on procedural due process. Defendants argue that prior to the present motion, Plaintiff's counsel asserted that Plaintiff would like to conduct discovery as to all matters, including matters that are presently pending in the state litigation proceedings.

(Dkt. #131 at p. 2) (emphasis added). The Court then proceeded to engage in an analysis on what discovery was permitted under Fifth Circuit law (Dkt. #131 at pp. 1–2). The Court determined that Fifth Circuit precedent only allowed discovery as to qualified immunity because of the stage of the litigation (Dkt. #131 at p. 1). It was accordingly unnecessary for the Court to engage in an

---

[24] As the Court previously mentioned, the attorneys' conduct toward each other is not the issue before the Court in this Sanctions Order. However, based on the nature of the allegation made against the Court, the Court will briefly address such conduct, to the extent necessary to analyze this statement.

[25] Mosser never filed a Rule 11 motion for sanctions based on the "colorful" and "offensive language" used by opposing counsel. The basis for the initial motion for sanctions was the alleged concealment of documents, not offensive language.

analysis of what type of discovery Jabary sought from Defendants or whether or not Jabary was "pretending" in his motion. Therefore, the use of this "creative adjective" was immaterial and had no effect on the Court's ruling. The Court's order does not offer any support for the bold allegation that the Court makes its decisions based on the use of creative adjectives.

To the extent that Mosser offers any of the documents the Court previously analyzed, that evidence is equally unavailing to provide factual support that the use of creative adjectives sways the Court's rulings. As such, this statement does not have any factual support and is in violation of Rule 11.

> **11. Like Much of Jim Jeffrey's Writing, His Response Is a Continual Game of Hide and Seek, Ignoring the Issues, and Conflating Actual Facts with What Jeffrey Can Manufacture to Deny Relief to Jabary. Plaintiff Did Not Conduct Discovery During This Round, and Sought an Order from the Court, Based on the Sincerely Held Belief That, Jeffrey Would Lie About His Cooperation in the Matter Merely to Tell the Court That Any Arguments Against Qualified Immunity "Should Not Be the Basis of Any Relief Herein, nor Should This Be the Basis of Allowing Any Discovery."** *It Is Disappointing That These Beliefs Are Continually Ratified.*

The Court acknowledged the sentence, "[i]t is disappointing that these beliefs[, that opposing counsel will lie to the Court,] are continually ratified," as the sanctionable sentence in this paragraph. To ratify means "to approve and sanction formally." MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/ratify (March 15, 2018). As such, Mosser would need to provide factual support for what the Court approved of or sanctioned formally. To support this statement, Mosser claims that he is "depressed and disappointed" and "frustrate[ed]" that the Court has never addressed opposing counsel's conduct in this case (Dkt. #250 at pp. 53–54). Mosser additionally cited the Court's Memorandum Adopting Report and Recommendation of the United States Magistrate Judge (Dkt. #100), the Court's Order Denying Motion to Compel (Dkt. #131), Jabary's Opposed Emergency Motion to Extend

Discovery (Dkt. #242), and Jabary's Emergency Motion to Compel Production or Privilege Log (Dkt. #245).

Mosser's disappointment, depression, or frustration does not provide any factual support for what the Court does or does not approve or ratify. At no point when making any of its rulings did the Court state approval of or ratify any alleged lying. Specifically, as to the motions Mosser referred to in his response to the Show Cause Order, in ruling on Jabary's Motion for Sanctions, the Court stated: "[i]t is further **ORDERED** that Plaintiff's Motion for Sanctions and Memorandum in Support of Motion for Rule 11 Sanctions (Dkt. No. 83) is **DENIED**." (Dkt. #100 at p. 4) (emphasis in original). Nowhere did the Court make the assertion that it approved of any concealment, falsification, or lying. Further, in ruling on Jabary's Motion to Compel, the Court did not approve of any conduct by opposing counsel; it simply applied the law of the Fifth Circuit (Dkt. #131).[26] Finally, as to Jabary's Opposed Emergency Motion to Extend Discovery and Jabary's Emergency Motion to Compel Production or Privilege Log, the Court granted the extension and compelled discovery for non-privileged documents. None of these rulings supports Mosser's allegation.

To the extent that Mosser offers any of the documents the Court previously considered, that evidence is equally unavailing to provide factual support that the Court ratified lying to the Court. Therefore, this statement does not have any factual support and is in violation of Rule 11.

---

[26] In his response, Mosser also points to the Court's ordering expedited responsive briefing to prove that the Court is imposing a "clear double standard" as to Mosser and his opposing counsel (Dkt. #250 at p. 54). While this argument is referring to the parties' conduct toward each other, the Court addresses it because of the bold accusation that the Court sets a different standard for the parties in the case. This statement is unsupported in fact. The difference in the response time can be explained by the difference in subject matter: a response to a scheduling conflict and supplying a privilege log are different matters and require a different amount of work. The difference in time does not support a double standard. Further, the Show Cause Order does not support the contention that the Court is imposing a double standard because the Show Cause Order only referenced sanctionable statements made to the Court, which Jim Jeffrey has not made.

**12. Numerous Witnesses Have Perjured Themselves by Submitting False Declarations and Affidavits to This Court, Plaintiff Has a Constitutional Right to Confront These Persons.** *There Is No Reason This Court Should Condone Jeffrey's Discovery Games, False Representations, and Childish Name-Calling.*

The Court recognized the last sentence of this paragraph to be sanctionable "[t]here is no reason this Court should condone Jeffrey's discovery games, false representations, and childish name-calling." As the Court previously mentioned, the definition of condone is "to regard or treat (something bad or blameworthy) as acceptable, forgivable, or harmless." MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/condone (March 15, 2018). As such, Mosser must provide evidence of what the Court regarded as acceptable, forgivable, or harmless. In response to the Show Cause Order, Mosser referenced Jabary's Motion for Sanctions (Dkt. #83), Jabary's Opposed Emergency Motion to Extend Discovery (Dkt. #242), and Jabary's Emergency Motion to Compel Production or Privilege Log (Dkt. #245).

The Court has already explained why these documents do not prove that the Court condoned the concealment of documents and they equally do not support that the Court is "condon[ing any] discovery games, false representations, [or] childish name-calling." The Court denied Jabary's Motion for Sanctions because it found no relief could be granted at the time (Dkt. #100). Further, the Court orally granted Jabary's Opposed Emergency Motion to Extend Discovery and granted in part Jabary's Emergency Motion to Compel Production or Privilege Log after a review of a privilege log (Dkt. #268). These rulings offer no support as to the Court's thoughts on what it regarded as acceptable, forgivable, or harmless.

To the extent that Mosser offers any of the documents the Court previously examined, that evidence is equally unavailing to provide factual support that the Court condoned discovery games,

false representations, and childish name-calling.  Accordingly, Mosser's final sanctionable statement does not have any factual support and is in violation of Rule 11.

### B.  Disrespectful

An attorney appearing in the Eastern District of Texas must act with the utmost personal integrity, professional integrity, civility, and professionalism.  LOCAL RULE AT-3(C); LOCAL RULE AT-3(E).  Further, attorneys in the Eastern District of Texas must always act with candor, diligence, and the utmost respect toward the Court.  LOCAL RULE AT-3(B).  The Court expects a higher standard of conduct from the lawyers that practice in front of it.  LOCAL RULE AT-3(K).

Mosser argues that several of his comments are not disrespectful because he is attempting to challenge the doctrine of qualified immunity itself, as opposed to criticizing the Court. However, this argument is utterly unavailing.  It is belied by the sheer number of times that Mosser included the phrase "this Court," or some variation, in his twelve sanctionable statements—a total of fifteen times.  Further, Mosser continually references "this case" as opposed to qualified immunity cases in general.  At no point in his response to the Show Cause Order did Mosser claim to be challenging the doctrine of qualified immunity; Mosser instead pointed to specific instances of the Court's actions to support his statements.  Moreover, not once when reading the Motion Requesting Status Conference and Revised Orders on Discovery (Dkt. #235), Reply to Response to Request for Status Conference (Dkt. #237), or the Response to Show Cause Order (Dkt. #250) did the Court, or opposing counsel,[27] recognize a challenge to the doctrine of qualified immunity, but instead identified disrespect toward the Court.

Mosser, although he claims he does not, challenges the Court's ability to follow its oath. Every judge that has been assigned as the United States District Judge or United States Magistrate

---

[27] "[McCullough] does not join the present Motion Requesting Status Conference (Doc. 235) because: it contains assertions which are disrespectful to the Court. . . ."  (Dkt. #236 at p. 1).

Judge on this case took the following oath: "I, [Amos L. Mazzant, III or Michael H. Schneider or Ron Clark], do solemnly swear that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as [United States Magistrate Judge or United States District Judge] under the Constitution and laws of the United States; and that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter.  So help me God."  28 U.S.C. § 453.

Mosser accused the Court of: refusing to permit justice to be done, in contravention of its oath to "administer justice without respect to persons"; creating a double-standard in the case, in contravention of its oath to "faithfully and impartially discharge and perform all duties"; failing to consider evidence, in contravention of its oath to "perform all the duties incumbent upon [a United States Judge] under the Constitution and laws of the United States"; condoning the alleged concealment of documents thereby preventing Jabary's recovery of his alleged civil rights violations, in contravention of its oath to "support and defend the Constitution of the United States against all enemies, foreign and domestic"; and depriving Jabary his due process rights, in contravention of its oath to "bear true faith and allegiance to the [Constitution of the United States]."  Mosser eviscerates the integrity of each individual judge who has been assigned to this case since its inception in 2010.  Mosser makes such bold, disrespectful, and inappropriate comments with a complete and absolute lack of factual or evidentiary support.  Mosser repeatedly attempts to impose his view of how this case has proceeded, his perception of why the Court ruled

the way that it did,[28] and his own personal frustrations as evidence of how the Court allegedly acted inappropriately.  Mosser's actions demonstrate the utmost disrespect.

The Court notes that had Mosser simply disagreed with the Court's rulings, it would not be issuing this Sanctions Order.  Litigants express disagreement with the Court's rulings by filing appropriate motions to reconsider and/or notices of appeal.  Mosser has evidenced his knowledge of this procedure by appealing the Court's decisions in this case to the Fifth Circuit twice.  However, the statements identified herein clearly surpass mere disagreement with the Court's rulings and are flagrantly disrespectful to the Court.  Consequently, the Court finds Mosser did not comply with Local Rule AT-3 when he made the previously identified statements.

### III.    Appropriate Sanctions

Although the discretion in fashioning an appropriate sanction is broad, the sanction imposed should be the "least severe sanction" adequate to deter future violations of Rule 11.  *Merriman*, 100 F.3d at 1194.  Sanctions may be monetary or nonmonetary.  FED. R. CIV. P. 11 advisory committee's note to 1993 amendment.  In determining whether to impose a sanction, the Court should consider

> [w]hether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants.

*Id.*

---

[28] Mosser's challenges to the Court's rulings were made haphazardly, ignoring not only the Court's reasoning, but even the Court's holding in Jabary's favor in certain instances.

The Show Cause Order, Show Cause Hearing, and Sanctions Order identified factually unsupported and disrespectful comments that Mosser made in two documents (Dkt. #235; Dkt. #237). During the Show Cause Hearing, Mosser repeatedly asserted that he did not understand how his statements were unsupported in fact, and even maintained that he did not understand how all of his statements were disrespectful.[29] Considering the fact that Mosser is a young lawyer and that the Court intended to educate Mosser at the Show Cause Hearing, the Court finds that ordering Mosser to attend two Texas Bar CLE classes, "Ethical Courtroom Behavior Part I: Maintaining Dignity" MCLE No: 928004588 and "Ethical Courtroom Behavior Part II: Enforcement" MCLE No: 928010836, will assist in educating Mosser on appropriate courtroom demeanor. These classes will serve Mosser well going forward in the profession.

However, although Mosser is a young lawyer, he is, in fact, trained in the law. While the Court is only sanctioning Mosser for statements in two documents, the Court observed other sanctionable comments in Mosser's response to the Show Cause Order. Further, after the Court explained how the statements were disrespectful and unsupported in fact, Mosser did not apologize[30] for making the statements or even admit they were disrespectful. Instead, he reurged their applicability. Not only did Mosser reiterate the statements he already made, but Mosser continued to make new statements that were sanctionable. This leads the Court to find that Mosser made these statements willfully. Because of the level of disrespect Mosser demonstrated toward the judges in the Eastern District of Texas and the Court, the Court also finds a monetary sanction

---

[29] Ultimately, Mosser reluctantly admitted that he could see how the Court could interpret or perceive his statements as being disrespectful.

[30] The Court acknowledges that Mosser, on a few occasions, apologized to the Court for the Court's perception or interpretation that the statements were disrespectful, but stood firm in his conviction that the statements were not disrespectful.

of $250 for each of the twelve identified statements appropriate to deter such conduct, not only from Mosser but all other litigants, in the future.

## CONCLUSION

It is therefore **ORDERED** that Nicholas D. Mosser is required to participate in the Texas Bar CLE classes "Ethical Courtroom Behavior Part I: Maintaining Dignity," MCLE No: 928004588; and "Ethical Courtroom Behavior Part II: Enforcement," MCLE No: 928010836 and pay a $3,000 fine to the Court. The fine is due and payable within ten (10) days from the date of the signing of this Order. The classes shall be completed within ninety (90) days from the date of the signing of this Order. Further, Mosser must submit evidence of completion of these classes within ten (10) days of their completion.

**SIGNED this 19th day of March, 2018.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE